**Jennie ALLEN, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 74–2884.

United States Court of Appeals, Fifth Circuit.

June 11, 1975.

---

910

Charles J. Hlavinka, Texarkana, Tex., for petitioner-appellant.

Dennis M. Donohue, Tax Div., Dept. of Justice, Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate, Sec., Jonathan S. Cohen, Murray S. Horwitz, Attys., Tax Div., Dept. of Justice, Meade Whitaker, Chief Counsel, Edward D. Robertson, I.R.S., Washington, D. C., W. B. Riley, Reg. Counsel, U. S. Treasury Dept., I.R.S., Dallas, Tex., for respondent-appellee.

Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Taxpayer, Jennie Allen, appeals from a decision by the Tax Court, 61 T.C. 125 (1974), finding deficiencies due in federal income tax for 1960 and 1961. We reverse the Tax Court's holding that Mrs. Allen is not entitled to the protection of section 6013(e), Internal Revenue Code of 1954, 26 U.S.C. § 6013(e), the "innocent spouse" statute, for tax year 1960, and affirm its holding that certain items of income for the tax years in question were "income from property," within the meaning of section 6013(e)(2)(A). We remand for further fact finding as to whether other items of income, which were not "income from property," were attributable to Mrs. Allen or to her former spouse.

## I.

The Commissioner of Internal Revenue assessed income tax deficiencies against Mrs. Allen and Lewis E. Allen, her former husband,[1] for 1959,[2] 1960, 1961 and 1962.[3] The amounts of the assessments for each year, respectively, were $28,-964.04, $41,662.86, $29,509.87 and $1,616.51. The deficiencies were assessed in substantial part because of income omitted from the joint returns filed by the Allens in those years. Most of the omitted income was from a grain storage business conducted by Lewis Allen through two controlled corporations, Allen Grain Company, Inc., and Allen Cartage Company, Inc. The Commissioner reallocated income and deductions between the Allens as individuals and Allen Cartage Company, Inc., pursuant to section 482, Internal Revenue Code of 1954. He also determined that the Al-lens had income as shareholders of Allen Grain Company, Inc., and gain on a transfer of assets to that company in 1960.

During the tax years in question, the Allens were residing in New Mexico, a community property state. The grain storage business, however, was located in Lubbock, Texas. Beginning around 1960, Lewis spent very little time at his New Mexico home. Mrs. Allen had to provide support for herself and her two sons from the proceeds of managing a coin-operated laundry. The Allens were divorced in 1966 and Mrs. Allen moved to Texas, where she resided at the time of filing her petition contesting the deficiency assessment now on appeal.

Unable to contest the merits of the Commissioner's deficiency assessment because of her total ignorance of her husband's business affairs, Mrs. Allen sought the protection of the innocent spouse statute, which provides:

> (e) Spouse relieved of liability in certain cases.—
>
> > (1) In general.—Under regulations prescribed by the Secretary or his delegate, if—
> >
> > > (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,
> > >
> > > (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

---

1. The Allens were divorced on January 10, 1966. The statutory notice of deficiency was sent November 30, 1966. The Allens were married and filed joint federal income tax returns for all deficiency years, 1959 to 1962.

2. By stipulation of the parties, collection of the deficiency for 1959 is barred by the statute of limitations. The Commissioner's determination for that year is therefore not involved in this appeal.

3. The Tax Court held that Mrs. Allen was entitled to innocent spouse relief for 1962. The adjustment in the amount of the deficiency in accord with that holding resulted in no deficiency being due for 1962. The Commissioner has not appealed the portions of the Tax Court's holding adverse to him, and our consideration of Mrs. Allen's points on appeal would not change the outcome for 1962. Therefore our opinion will deal only with the years 1960 and 1961.

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. 26 U.S.C. § 6013(e)(1).

The Tax Court held that Mrs. Allen was entitled to innocent spouse protection for 1961 and 1962 since she met the three statutory prerequisites set forth in section 6013(e)(1)(A), (B) and (C). For 1960, however, the Tax Court held that Mrs. Allen had failed to establish the first of these three requirements, that the omission from gross income attributable to her husband Lewis be greater than 25 percent of the gross income stated on their return for that year.

Mrs. Allen has appealed from the Tax Court's decison that she is not entitled to innocent spouse protection against the 1960 deficiency due, and from its holding as to the extent of protection the statute afforded her for 1961 deficiencies.

## II.

Mrs. Allen first contends that the omitted income was not "income from property," and thus under section 6013(e)(2)(A),[4] the community property laws of New Mexico should be disregarded in determining to whom the omitted income is attributable. If we accept this argument, not only does Mrs. Allen meet

the 25 percent test for 1960, but her liability for 1961 taxes is also reduced, to the extent that liability is solely attributable to the effect worked by the community property law in this case, as explained below.

As stated in the Tax Court's findings of fact, the specific items of omitted gross income which were held to constitute "income from property" are:

| | 1960 | 1961 |
|---|---|---|
| Rent income—Allen Cartage Co., Inc. | $ 59,010.37 | $100,225.59 |
| Distributions—Allen Grain Co., Inc. | 74,719.46 | 100,657.07 |
| Gain on transfer of assets to Allen Grain Co., Inc. | 38,278.90 | |
| TOTAL | $172,008.73 | $200,882.66 |

 We start with the proposition that we are bound by a "clearly erroneous" standard when reviewing Tax Court findings of fact. 26 U.S.C. § 7482; Rule 52(a), Fed.R.Civ.P. In addition, Mrs. Allen had the burden of proof in the court below to establish that she was entitled to innocent spouse relief. Jerome J. Sonnenborn, 57 T.C. 373 (1971); Nathaniel M. Stone, 56 T.C. 213 (1971). This entails, of course, showing that the omitted income is attributable to the other spouse.

Although the Tax Court made no specific finding to this effect, it is clear from the record and implicit in its opinion that, but for the community property law of New Mexico, the items of income identified above were shown to be attributable to Lewis. Community property laws are disregarded under section 6013(e)(2)(A), except for "income from property;" therefore, Mrs. Allen had to show that it was not "income from property" to avoid the attribution, for tax purposes, of half of the omitted income by operation of New Mexico's community property law.[5]

---

4. Section 6013(e)(2)(A), Internal Revenue Code of 1954, provides: "(2) Special rules.—For purposes of paragraph (1)—(A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws . . . ."

5. New Mexico Stat.Ann. § 57–4–1 (1953); Burlingham v. Burlingham, 72 N.M. 433, 384 P.2d 699 (1963).

Mrs. Allen bases her argument that the rents, distributions, and gain on transfer of assets were not income from property on a contention that the legislative history of section 6013(e) reveals a congressional intent to disregard community property laws when the omitted income is generated by business activities which require the rendering of substantial services by one spouse; and she contends the grain business required Lewis' services.

■ This argument is based upon the following passage from the legislative history of the innocent spouse statute:

> Income earned by a husband, for example, and omitted from a joint return, is to be attributed to the husband, even though it may constitute community property, in determining whether the wife is entitled to relief from the tax liability under this provision. On the other hand, income from property, such as rental income from an apartment house owned by the marital community (*with neither spouse rendering substantial services in producing the rental income*) is to be deemed the income of both spouses. S.Rep. No. 91-1537, 91st Cong., 2d Sess., 1970 U.S.Code Cong. & Admin. News p. 6089 (emphasis added).

We agree with the Tax Court that where omitted income is generated by the performance of substantial services by one spouse, that income should be attributed to that spouse for purposes of section 6013(e)(1).

However, Mrs. Allen offered no evidence to support her contention that Lewis was actively involved in running the grain business. She was the sole witness at the trial below. She could not describe what the business consisted of; she had merely visited the premises on a few occasions and observed some round storage tanks. Nor did she know what Lewis did on his frequent trips to Texas.

Mrs. Allen asks us to take judicial notice of the fact that a grain storage business requires the rendering of significant services, and to presume that it was Lewis who rendered those services on his periodic trips to the facilities.

■ She relies on Rev.Rul. 65-91, 1965-1 Cum.Bull. 431. In this ruling under Subchapter S of the Internal Revenue Code, the Department of the Treasury ruled that, in the example given therein, payments received by a grain storage operation were not "rents" within the meaning of section 1372(e)(5) of the Code, because significant services were required to be performed in connection with the storage operation. However, Mrs. Allen produced no evidence which would indicate that Lewis' grain storage business involved the same sorts of services, such as periodic inspection and turning the grain. Nor did she offer any evidence that Lewis performed these or other services in connection with the business. We cannot substitute suppositions, no matter how probable, and judicial notice for the evidentiary facts necessary to sustain Mrs. Allen's burden of proof here.

Perhaps realizing that her evidence regarding Lewis' personal rendition of services was thin, Mrs. Allen argues that we should interpret "income from property" in section 6013(e)(2)(A) to exclude business income, as opposed to passive investment income. If section 6013(e)(2)(A) is so construed, she argues, the other spouse need not personally have rendered services in the production of the omitted income; it will suffice to establish that the income is not from property if it is generated by business activities which necessitate significant services on the part of anyone. Such a test is, in effect, the same as that for determining whether a corporation is eligible to elect Subchapter S status under the Internal Revenue Code of 1954, sections 1371-1377.

Once again, Mrs. Allen must rely on Rev.Rul. 65-91, *supra*, and its recogni-

tion that under certain circumstances a grain storage business requires the rendition of significant services. Of course, our previous disposition of Mrs. Allen's reliance on that ruling is also applicable here. Her failure of proof that Lewis Allen's grain business was similar to the one in Rev.Rul. 65–91 makes futile her reliance on it.

■ Furthermore, we find little merit in her contention that "income from property" should be so construed. Given the very disparate purposes of Subchapter S and the innocent spouse statute, there is no logical basis for equating "income from property" in section 6013(e)(2)(A) with "passive investment income" as defined in section 1372(e)(5). Although the legislative history of section 6013(e)(2)(A) is indeed scant, it appears that the "substantial services" rendered must be those of one spouse in order to avoid the community property laws' effect of making all income received by either spouse community property.

■ Accordingly, we can find no basis for overturning the Tax Court's finding of fact that rents, distributions, and gain on a transfer of assets constituted "income from property."

### III.

The determination that Mrs. Allen did not meet the 25 percent test for 1960 did not result solely from the Tax Court's application of New Mexico's community property law. Mrs. Allen contends that, even taking community property laws into consideration, the method by which the Commissioner computed the amount of gross income omitted from the 1960 return was erroneous, and that a correct computation establishes that the omission was greater than 25 percent of the gross income stated on the return.

The gross income stated on the return was $235,735.00. The Tax Court found that gross income in the amount of

$106,667.20 had been omitted, calculated as follows:

| | |
|---|---|
| Rent income—Allen Cartage Co., Inc. | $ 59,010.37 |
| Distributions—Allen Grain Co., Inc. | 74,719.46 |
| Gain on transfer of assets to Allen Grain Co., Inc. | 38,278.90 |
| Interest | 1,483.16 |
| Storage receipts | (66,814.69) |
| TOTAL | $106,667.20 [6] |

The last item above, storage receipts, represents an amount by which gross income on the Allen's 1960 return had been overstated due to the use of the accrual method of accounting when the cash method should have been used. The Commissioner thus theorized that the amount of this overstatement should be applied to reduce the amount of the omission.

The Commissioner also took this overstatement fully into account in calculating the amount of the omission which was attributable to Lewis:

| | |
|---|---|
| One-half of income from community property (½ x $172,008.73) | $86,004.37 |
| Interest | 1,483.16 |
| Storage receipts | (66,814.69) |
| | $20,672.84 |

Calculated thus, the amount omitted and attributable to Lewis is less than 25 percent of $235,735.00, the gross income stated on the return.

■ We wholeheartedly agree with Mrs. Allen that it was improper to deduct an amount of overstated income from the omission from gross income for purposes of determining whether the 25 percent test was met. The correct amount of the omission attributable to Lewis is $87,487.53, which is greater than 25 percent of stated gross income.

Section 6013(e)(1)(A) is satisfied if on a joint return "there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return." The question we are presented with is whether the amount

---

**6.** Our addition of this column of figures gives us a total of $106,677.20. The mathematical error in this calculation of the 1960 omission is contained in the Tax Court's opinion.

which must be in excess of 25 percent of stated gross income is the amount which should have been reported as income but was not, or the amount which represents the net understatement of gross income, taking into consideration other selected corrections in income made by the Commissioner.

We use the words "selected corrections" advisedly; not all of the Commissioner's downward adjustments in the Allens' income were subtracted from the omitted amount in arriving at the net omission of $20,672.84. In addition to the reduction for overstated storage receipts, the deficiency computation also shows an additional deduction in the amount of $10,891.27 allowed for intangible drilling costs.

 The Commissioner very properly did not figure this additional deduction into his computation for innocent spouse protection. The statute was intended to grant relief only for tax liability arising from omissions from gross income by one spouse; it provides no relief from tax liability which results from a fraudulent deduction, for example.[7] Therefore, both disallowed deductions and additional deductions, allowable but not taken, should be disregarded when dealing with innocent spouse relief under section 6013(e). We see no more reason to take into account an overstatement due to an erroneous accounting method than a deduction which could have been taken, but was not. They are both errors in the taxpayer's computation on his return. An omission of gross income which was properly includable is an altogether separate and different error. Of course, all errors made by the taxpayer, whether they result in an upward or downward adjustment, must be balanced together in determining the income tax

deficiency due. But it is only one variety of error, an omission, to which section 6013(e) may apply. In determining whether the quantity of the error is great enough to justify innocent spouse relief, i. e., whether the omission is in excess of 25 percent of stated gross income, only errors of omission should enter the computation.

 Section 6013(e) is a remedial statute. Sanders v. United States, 509 F.2d 162 (5th Cir. 1975). Its sole purpose is to remedy, in certain circumstances, the inequities which sometimes result from the imposition of joint liability. See S.Rep. No. 91–1537, supra, 1970 U.S. Code Cong. & Admin.News p. 6089. To effectuate that purpose, its provisions should be construed and applied liberally in favor of those whom the statute was designed to benefit. Cf. Helvering v. Bliss, 293 U.S. 144, 150–151, 55 S.Ct. 17, 79 L.Ed. 246 (1934).

The Commissioner's interpretation of section 6013(e)(1)(A), as reflected by his computation of the omission, flies in the face of the purpose of the innocent spouse provision. This can best be illustrated by examining what would have been the posture of this case if the storage receipts had not been erroneously overstated. Stated gross income in such a case would have been $168,920.31 ($235,735.00 less $66,814.69). The Commissioner would have been deprived of his argument for reducing the omission attributable to Lewis; it would have remained unadjusted at $87,487.53. The 25 percent test unquestionably would have been met. Since the Tax Court found that Mrs. Allen did not know, and had no reason to know, of the omission, section 6013(e)(1)(B), and that it is inequitable to hold her liable for the tax deficiency attributable to the omission, sec-

7. See S.Rep. No. 91–1537, 91st Cong. 2d Sess., 1970 U.S.Code Cong. & Admin.News pp. 6089, 6092. Enactment of the innocent spouse statute came about largely as a result of judicial pleas for statutory relief from the harsh but inescapable imposition of joint liability where one spouse had unreported income unbeknownst to the innocent spouse and not enur-

ing to the benefit of the innocent spouse. E. g., Louise M. Scudder, 48 T.C. 36, 41 (1967). A typical example cited by the report of the Senate Finance Committee, S.Rep. No. 91–1537, supra, is the omission on a joint return of funds embezzled by one spouse, with ensuing tax liability therefor imposed on the completely innocent other spouse.

tion 6013(e)(1)(C), she would have been entitled to innocent spouse relief for 1960.

In the case before us, however, the Commissioner argues that the 25 percent test is not met because stated gross income was $235,735.00 and the omission was $20,672.84. The difference in these figures and the ones in our hypothetical example is due solely to the storage receipts overstatement. The Commissioner contends that the overstatement is attributable solely to Lewis; that is his rationale for deducting the overstatement in full, rather than attributing it half and half to each spouse as a community property item. The incongruous and ironical result, if we were to accept the Commissioner's position, would be that because of one mistake attributable to her former spouse, Mrs. Allen is denied the benefits of a statute enacted to insulate her from tax liability for other mistakes attributable to him. The two mistakes should not be allowed to cancel out innocent spouse relief where the statute does not clearly authorize the Commissioner's novel approach.[8]

■ We hold, therefore, that Mrs. Allen met the 25 percent test for tax year 1960. Since the Tax Court held that she met the requirements of section 6013(e)(1)(B) and (C), she is entitled to innocent spouse protection to the extent set forth in the Tax Court opinion. Although Mrs. Allen has argued that the relief afforded by section 6013(e) should also include relief from tax liability which results from deductions disallowed by the Commissioner, the statute clearly provides relief only to the extent that

tax liability flows from omissions from gross income which are attributable to the other spouse. Spaulder v. Commissioner, 31 T.C.M. 723 (1972).

■ Finally, we note an inconsistency between what we perceive the Tax Court holding to be and the Commissioner's computation for the entry of decision on the amount of income tax deficiency due. We accordingly remand for an explicit finding of fact by the Tax Court on the question of attribution of the non-community property income omitted from the Allens' 1961 return. The Tax Court opinion suggests that the Tax Court considered all omissions attributable to Lewis, except to the extent the community property laws were operative. This would be consistent with the Commissioner's computation of omissions attributable to Lewis for 1960, contained in the Tax Court's opinion, reflecting his position that interest income was attributable to Lewis in that year. If this is the case, then in 1961, for which year the Tax Court found Mrs. Allen entitled to innocent spouse relief, she should also have been relieved of tax liability on all of the interest and oil income omitted that year, in the amount of $1,668.19. The Commissioner's computation does not reflect this adjustment in its correction of income in accordance with the Tax Court opinion. If the Tax Court finds that this income was attributable to Lewis, the deficiency due for 1961 should be corrected to conform with that determination.

The decision of the Tax Court is affirmed in part, reversed in part and remanded.

8. We by no means intend to suggest that a gross income figure of $168,920.31 should be used in determining whether the 25 percent test is met here. Section 6013(e)(1)(A) clearly requires the amount of the omission, $87,-487.53, to be in excess of "the amount of gross income stated in the return." The Allens stated in their return that their gross income was $235,735.00; hence, to qualify for section 6013(e) relief, the omission must be 25 percent of $235,735.00.