SANDRA FEINGOLD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feingold v. Comm'r
Docket No. 5124-76.
United States Tax Court
T.C. Memo 1980-163; 1980 Tax Ct. Memo LEXIS 421; 40 T.C.M. (CCH) 309; T.C.M. (RIA) 80163; May 6, 1980, Filed *421 Wallace Musoff, for the petitioner. Richard S. Kestenbaum, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency of $7,359 in petitioner's 1972 income tax, as well as a $368 addition to tax under section 6653(a), Internal Revenue Code of 1954. Petitioner does not contest any of the Commissioner's adjustments in respect of the 1972 joint return filed by petitioner and her husband, from whom she has since been divorced. Moreover, she concedes that $20,526 in gross income attributable to her husband from "On Our Own, Inc." was omitted from the joint return. The sole question for decision is whether petitioner is entitled to relief from liability for *422 the portion of the deficiency and addition to tax attributable to this omitted income as an "innocent spouse" under section 6013(e), Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and related exhibits are incorporated herein by this reference. Petitioner, a New York resident, was married to William Feingold from 1962 to 1976. She has two children, who were aged 8 and 18 in the taxable year, 1972. The couple resided together during that year, although Mr. Feingold was sometimes away from home except on weekends, and sometimes stayed away from home for as long as two weeks. The Feingolds experienced marital difficulties and separated in September of 1973. They were divorced by decree of the Supreme Court of New York in 1976. In 1972 petitioner was a housewife, unemployed outside the home. She had received training as a bookkeeper, and was employed in that capacity at times prior to 1972. Mr. Feingold was self-employed as a manufacturer's representative dealing in ladies' apparel. In this business, Mr. Feingold sold clothing on commission to retail establishments. He was also the principal *423 owner of a business called "On Our Own, Inc.," which maintained a showroom and employed a receptionist. The record does not reveal the nature of that business, nor does it indicate whether it was connected with Mr. Feingold's activities as a manufacturer's representative.
Mr. Feingold refused to discuss his business activities with petitioner, although he did tell her that business in 1972 was "very bad". He admitted to borrowing approximately $200 of the $300 he gave petitioner weekly for her support, and petitioner received telephone calls from persons claiming that Mr. Feingold owed them money. The F.B.I. visited petitioner at her home in 1972 and indicated that Mr. Feingold was indebted to loansharks and bookmakers. Subsequent to the time he separated from petitioner in 1973, Mr. Feingold was arrested for mail fraud and embezzlement. At some time he began to serve as an informant for the F.B.I. He became a participant in a Federal witness protection program and has been given a new identity and relocated. Petitioner has not seen her former husband since approximately 1977; their last meeting was arranged at the Federal courthouse at his request for the purpose of visiting *424 with his son. Although Mr. Feingold is obliged by the terms of a court decree to support petitioner's youngest son, her efforts to enforce that decree have been unsuccessful, as have her efforts to reach Mr. Feingold through the F.B.I. and the U.S. Marshal Service. Petitioner handled the financial affairs of her household in 1972, writing checks from her personal account for payment of household expenses and reconciling the check records with her monthly bank statements. She received approximately $300 per week from her husband in 1972, and she used these funds for the support of herself and her children. Petitioner also received about $60 to $75 a week from her father which she used to supplement the weekly allowance from her husband for living expenses. Deposits to petitioner's checking account were made from these funds. She paid most of her expenses by check, although she paid household grocery bills in cash. The record contains copies of what appear to be the bulk of the checks drawn on petitioner's checking account in 1972 to pay her expenses. The total of petitioner's checks included in the record is $19,033.94. [1] Other than the approximately $300 per week used *425 by petitioner for the support of herself and her children, she was given no other funds by her husband. Sometime in either 1972 or 1973, Mr. Feingold transferred his interest in the couple's home to petitioner. The house was purchased for about $30,000 in 1968 and was owned jointly by petitioner and her husband. Mr. Feingold supplied the funds for the down payment of approximately $3,000 with a 30-year mortgage loan providing the remainder of the purchase price. Various liens have been placed on the house as a result of Mr. Feingold's debts. Petitioner is still making the payments on the mortgage loan. Mr. Feingold did not give petitioner any furs, jewelry, or other assets in 1972. Petitioner did at one time own some jewelry which she had inherited from her grandparents and her mother, but this jewelry was pawned by Mr. Feingold in 1972 and has not been redeemed. Petitioner's debts are now in excess of her earnings. Although petitioner was suspicious of her husband because of his failure *426 to discuss his business activities with her, a factor which contributed to their separation in September of 1973, she signed a joint 1972 income tax return to avoid fighting with her husband. This return was prepared by an accountant from information supplied solely by Mr. Feingold, in accordance with the practice of petitioner and her husband in prior years. Petitioner did not review the return before affixing her signature. The return showed no taxable income and no income taxes due, although a self-employment tax of $621 was shown. Gross sales from Mr. Feingold's business as a "commission agent" were reported to be $17,462. The expenses of this business were stated to be $9,180, including depreciation of $94. Mr. Feingold's business income of $8,282 [2] and interest income of $132 were the only items of income shown on the return. The return contains no reference to "On Our Own, Inc.," although it has been stipulated that $20,526 in income, which the Commissioner's deficiency notice attributed to payments to Mr. Feingold from "On Our Own, Inc.," was omitted from the return. *427 OPINION A spouse filing a joint return may be relieved of liability for taxes due on amounts of income omitted from the return if the three conditions, prescribed in section 6013(e), Internal Revenue Code of 1954, [3] are satisfied: (1) the amount of income omitted which is attributable to the other spouse exceeds 25 percent of the gross income stated on the return; (2) the "innocent spouse" did not know of or have reason to know of the omitted income when the return was signed; and (3) considering all the circumstances, including whether the "innocent spouse" derived a significant benefit from the omitted income, it would be inequitable to find the spouse liable for the tax due on the omitted income. Fox v. Commissioner, 61 T.C. 704, 716 (1974). The parties have stipulated that the first condition has been met. After considering petitioner's testimony and the other evidence, we conclude that she has also satisfied the second and third conditions and is thus entitled to the relief provided by section 6013(e).
*428 We do not find it difficult to conclude, on the basis of the record, that petitioner lacked actual knowledge of the omissions from her husband's income on their joint return. As noted in our findings of fact, petitioner did not examine the return before signing it, and her husband did not keep her apprised of his business affairs. Petitioner further testified that she had no knowledge of the omissions of income from the return, and she impressed us as a credible witness. We find that she did not have actual knowledge of the omissions of income from the return. In order for petitioner to demonstrate that she had no reason to know of the income omitted from her return, she must establish that a reasonable taxpayer in similar circumstances would not be expected to have knowledge of the omitted income. See Sanders v. United States, 509 F. 2d 162, 166-167 (5th Cir. 1975); Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979). We conclude that petitioner has met her burden in this respect. Although the adjusted gross income reported on the 1972 joint return was substantially less than the amount of money petitioner received from her husband *429 for support, we found her explanation of the difference to be reasonable. She understood that her husband was heavily in debt, and it was reasonable for her to conclude that the borrowed funds represented the major source of his weekly payments to her. We found her testimony credible, particularly in light of Mr. Feingold's known association with loansharks and the calls petitioner received from his creditors. Moreover, the omission of any reference on the return to "On Our Own, Inc.," need not have alerted petitioner to any unreported income. Her husband told her that business was "very bad" in 1972, and it would not be unusual for a closely held corporation to fail to pay a salary or dividends to its principal owner in such circumstances. We have also found as a fact that petitioner used the funds she received for the ordinary support of herself and her children. She had received approximately the same amount for support since at least 1970. We think that the receipt of a relatively constant amount of funds for support would not ordinarily give a spouse reason to suspect the existence of unreported income. See Mysse v. Commissioner, 57 T.C. 680, 698 (1972). *430 Moreover, even if the receipt of an exceptionally generous level of support might alert a spouse to the existence of unreported income, petitioner did not receive such a generous level of support. The sums petitioner received from her husband in 1972 were in fact insufficient to meet her needs, and she was forced to obtain additional funds from her father. No lavish expenditures by petitioner or her husband have been called to our attention, nor do we note an appreciable rise in petitioner's standard of living in 1972. Although petitioner is not ignorant of financial matters and took responsibility for payment of household expenses and bills, she was not privy to information concerning Mr. Feingold's business, the source of the unreported income. Furthermore, although petitioner in 1972 became aware that her husband was involved with loansharks and bookmakers, she had no reason to suspect that he was deriving income from criminal activity, and the record does not reveal the presence of any such income in 1972. In the circumstances, we do not find that the limited funds she received from her husband should have alerted her to underreporting of income. Compare Terzian v. Commissioner, 72 T.C. 1164, 1170-1172 (1979), *431 and Mysse v. Commissioner, supra, 57 T.C. at 697-699, with estate of Jackson v. Commissioner, supra, 72 T.C. at 361-362 (1979), and Sonnenborn v. Commissioner, 57 T.C. 373, 381-382 (1971). It is true that the refusal of one spouse to be forth-right about business affairs may put the other spouse on notice of omissions of income. Adams v. Commissioner, 60 T.C. 300, 303 (1973). However, we find Adams distinguishable. In Adams, the husband and wife were involved in similar business activities, and had originally cooperated with each other in securing sales opportunities. The wife supplied her sales information to the husband for approximately four years, but in subsequent years, she refused to provide him with copies of tax returns and other financial information. The Court found that the husband should have been put on notice of the omissions of income. Adams v. Commissioner, supra, 60 T.C. at 303. In this case, petitioner had not participated in her husband's business, and the record strongly suggests that he had not previously been communicative about his business affairs. *432 Certainly, we have no basis for concluding otherwise, and, in the context of the record before us, we find that petitioner had no reason to know of the omission from gross income on the joint return. We also find that petitioner derived no significant benefit from the unreported income in 1972. The term "benefit", as used in the statute, does not include ordinary payments for support. See S. Rept. No. 91-1537, 91st Cong., 2d Sess. 3 (1970), 1971-1 C.B. 606, 607-608. Since we have found that the $300 per week petitioner received from her husband constituted ordinary support for petitioner and her children, we need not consider these funds as affording any significant "benefit" to petitioner. The only asset petitioner received from her husband was his interest in the house in which the couple resided. The property was purchased jointly by them in 1968, with a down payment of $3,000 supplied by the husband and a 30-year mortgage loan for the balance of the purchase price. The Government has not suggested that unreported income was used by Mr. Feingold for the down payment or to provide funds for the mortgage payments, at least prior to 1972. Furthermore, the house *433 is encumbered by liens arising from his debts, and petitioner has made the mortgage payments on the house since her acquisition of his interest in the property. In these circumstances, we cannot find that the petitioner's receipt of her husband's interest in their home provided any significant benefit to petitioner from Mr. Feingold's unreported 1972 income. Since petitioner received no substantial assets or payments in excess of her needs for support from petitioner, we hold that she did not significantly benefit from her husband's unreported income. Cf. Nicholas v. Commissioner, 70 T.C. 1057, 1067 (1978). In light of this finding, and the fact that petitioner is currently unable to even collect child support from Mr. Feingold, we conclude that it would clearly be inequitable to charge petitioner with the tax liabilities incurred by her husband on his unreported income. Cf. Allen v. Commissioner, 61 T.C. 125, 130-131 (1973), reversed on other grounds 514 F. 2d 908 (5th Cir. 1975). Decision will be entered under Rule 155. Footnotes
1. Our own examination of the checks in the record produces a slightly lower total, but we have accepted the stipulated total because the difference is so minor as to be immaterial.↩
2. The Commissioner's adjustments of Mr. Feingold's business income and expenses suggest that his income from this business should have been shown as $16,148.↩
3. Section 6013(e) provides in relevant part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General. Under regulations prescribed by the Secretary * * *, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩