MONSITA E. QUAVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quave v. Commissioner
Docket No. 8341-83.
United States Tax Court
T.C. Memo 1985-7; 1985 Tax Ct. Memo LEXIS 625; 49 T.C.M. (CCH) 445; T.C.M. (RIA) 85007; January 3, 1985. Bruce Hart,John Pierre, James Kennedy, for the petitioner. William P. Hardeman, for the respondent. KORNER MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined income tax deficiencies for the years 1974 and 1975 against Fred H. Kelly and Monsita E. Quave (formerly, Monsita E. Kelly), petitioner herein, in the respective amounts of $8,049.68 and $8,194.21. Respondent also determined additions to tax under section 6653(b) [1] against Fred H. Kelly alone, in the respective amounts for the years 1974 *626 and 1975, of $4,024.84 and $4,097.11. After concessions, including respondent's concession of the deficiency for 1974, the sole issue remaining for decision is whether petitioner should be releved from liability with respect to the 1975 deficiency as an innocent spouse within the meaning of section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated, and such facts together with accompanying exhibits, are incorporated herein by this reference. At the time of filing her petition herein, Monsita E. Quave (hereinafter "petitioner") was a resident of Fort Worth, Texas. On December 15, 1974, petitioner married Fred H. Kelly (hereinafter "Kelly"), and the couple timely filed a joint Federal income tax return, Form 1040, for calendar year 1975, with the Internal Revenue Service Center at Austin, Texas. Petitioner's formal education consisted of graduation from high school, followed by a two-year commercial course of study in basic *627 bookkeeping, as well as typing and shorthand in English and Spanish. Petitioner has been married three times, including her marriage to Kelly, and she has two children from her first marriage. Prior to her marriage to Kelly, petitioner rented a duplex apartment owned by her son, which was located in a suburb of Fort Worth. She owned a 1970 Cadillac and a set of French Provincial style furniture. At that time, and at all other times here pertinent, she was employed as a secretary for Radiation Research Associates, Inc. (hereinafter "RRA"), earning $1,100 per month. Petitioner was first introduced to Kelly through a mutual acquaintance in or about October of 1974. At that time, Kelly was unemployed, but he told petitioner that he expected to buy a business in three months. Petitioner was impressed by Kelly's manner and appearance, and after a courtship of only one month, they were married. After their wedding, petitioner and Kelly moved to his residence. During their marriage, Kelly, displaying what petitioner described as a "Dr. Jekyll and Mr. Hyde" personality, was at times charming, but at other times abusive to the point of threatening her with physical harm. At one *628 point, petitioner temporarily left Kelly to live with her brother. In or about January of 1975, Kelly went into business as the sole owner of a furniture store. When petitioner asked Kelly whether he maintained books and records, he replied that he did not, so she offered to maintain such books and records for him. Kelly agreed, and she began part-time work in the store, in addition to her full-time employment with RRA, maintaining books and records, paying some bills and assisting the clientele. Petitioner worked in the store for only a brief period each afternoon, and for about six hours each Saturday, receiving no compensation for such services. [2]
Petitioner posted all receipts which were left for her by Kelly at the end of the day. Generally, she checked with her husband to make sure that he had given her all of the sales receipts each day. Despite *629 her efforts, Kelly was often uncooperative in providing his wife with the information and documents she needed to post receipts and maintain books and records for the store. As described by respondent's special agent, Max Wayman: "She oftentimes had to run [Kelly] down to get whatever records she got from him, and when he would give her records, he would generally throw something on the table." Almost all of Kelly's transactions were cash sales. Petitioner never deposited cash receipts from such sales, and she was unaware of the total amount thereof. At the end of 1975, petitioner took all of her furniture store records as well as records relative to her employment with RRA to an accountant named Billy Allard, so that he could prepare a joint tax return for that year for her and Kelly. Petitioner asked Allard to contact Kelly if he had any questions regarding the furniture business, and it was petitioner's belief that her husband was contacted by Allard. During 1975, petitioner was treated for an existing hypertensive medical condition, which was aggravated by stresses resulting from her marriage to Kelly. On September 1, 1976, petitioner and Kelly were divorced. *630 Pursuant to the divorce decree entered by the Domestic Relations Court of Tarrant County, Texas on that date, petitioner was awarded the following property: (1) All household goods and furniture in her possession; (2) Retirement and employment benefits to which her employment entitled her; (3) All her jewelry and personal effects; (4) All cash and bank accounts in her name or under her control; (5) A parcel described as "Lot 9, Bernice Addition," free and clear of debt; (6) Parcels described as "Lots 10, 11 and 12, Morgan Heights Addition," free and clear of debt; (7) A part of a parcel described as "Block 19 of Shelby County Land;" (8) A parcel described as "Lot 10A, Block 44 * * * Richland Park Addition;" (9) A 1975 Cadillac automobile, free and clear of debt; and (10) Certificates of deposit in the amount of $11,000. Each of the parcels described in items five through eight, was acquired by Kelly during his marriage to petitioner. By quitclaim deed dated September 1, 1976, Kelly transferred to petitioner title to the property described in items five through eight. The parcel described as Lot 9, Bernice Addition, was transferred by petitioner, *631 subject to certain indebtedness, to the lawyer who represented her in the divorce proceedings, in consideration of his services. The equity in such property at that time was no more than $500. Petitioner received item six, which consists of Lots 10, 11 and 12, Morgan Heights Division, free and clear of debt, and still owned that property as of the time of trial in this matter. The value of such property is not disclosed on this record. The parcel described as Block 19 of Shelby County, consists of approximately two-thirds of an acre, on which is situated a frame structure which is used as a hobby shop. Petitioner, who continues to hold title to the parcel, receives $100 per month in rental income therefrom. The parcel described in item eight as Lot 10A, on which was situated a house, was sold by petitioner for $3,000, half of which she paid to Kelly in response to his persistent requests that she turn all of it over to him. Petitioner never received the certificates of deposit described in item ten. As for the 1975 Cadillac, which was awarded to petitioner, it was subsequently taken from her possession by Kelly at gunpoint. On March 10, 1977, an agreement was *632 entered into by petitioner and Kelly in the Domestic Relations Court in Tarrant County, Texas, wherein, in lieu of the 1975 Cadillac and the $11,000 in certificates of deposit awarded to petitioner in the divorce decree, Kelly was ordered to make all payments with respect to, and petitioner was awarded, his 1977 Cadillac; and Kelly was further ordered to execute in petitioner's favor a non-interest bearing note in the amount of $2,500 and to pay to her $500 in cash. Notwithstanding such agreement, Kelly failed to pay for the 1977 Cadillac. Instead, petitioner made the payments on such car, totaling over $6,000, paying off the loan during 1980. Furthermore, Kelly executed no note in petitioner's favor, and paid her only $100 of the $500 which he had agreed to pay. Petitioner made no effort to enforce the March 10, 1977 agreement. On their joint return for 1975, which was prepared by Billy Allard, Kelly and his wife reported adjusted gross income of $12,638, taxable income of $8,186, and a tax liability of $1,610. The adjusted gross income, as reported, consisted of the following items: Income
Amount
(1) Monsita's compensation from RRA
$ 9,090
(2) Net profits from furniture store
3,150
(3) Rental income
298
(4) Interest income
100
Total:
$12,638
*633 The correct taxable income for 1975, as determined by respondent and stipulated to by petitioner, was in the amount of $32,634.44. The understatement of gross income for 1975 which gives rise to this disparity was attributable solely to Kelly's operation of his furniture store, and resulted in his conviction for income tax evasion. The amount of each adjustment to the come of petitioner and Kelly for 1975, as determined by respondent, is correct. OPINION Because of stipulations and concessions by the parties, the sole issue presented for our determination is whether petitioner should be relieved of liability with respect to the 1975 deficiency as an innocent spouse within the meaning of section 6013(e). For the tax year in issue, section 6013(e) was amended by section 424 of the Deficit Reduction Act of 1984, Pub. L. 98-369, to read, in pertinent part, as follows: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.-- (1) In General.--Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items *634 of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. As we have found, petitioner and her then-husband, Kelly, filed a joint return for 1975, thus meeting the requirement of section 6013(e)(1)(A). On such return, petitioner and Kelly reflected a total tax liability of only $1,610. Respondent determined that the tax liability of petitioner and Kelly for such year was actually $8,194.21. We have found, by stipulated agreement of the parties, that the adjustments to income determined by respondent for 1975 were correct, and were attributable to Kelly's operation of his solely-owned furniture store. Under section 6013(e)(3), "substantial *635 understatement" means any understatement in excess of $500. Under section 6013(e)(2), any omitted items of gross income constitute "grossly erroneous items." It is therefore clear that the return filed by petitioner and Kelly for 1975, reflects a substantial understatement of tax attributable to grossly erroneous items of one spouse, within the meaning of section 6013(e)(1)(B). The requirements of section 6013(e)(1)(A) and (B) having been met, we turn to the two remaining factors, first, whether petitioner knew or had reason to know in signing the joint 1975 return, that there was a substantial understatement; and second, whether it is inequitable, taking into account all the facts and circumstances, to hold petitioner liable for the foregoing deficiency. It is petitioner's burden to satisfy both such factors in order to be relieved of liability. Adams v. Commissioner,60 T.C. 300 (1973); Rule 142(a). In assessing these factors, we face what are essentially factual and subjective determinations, based upon the evidence presented and the reasonable inferences to be drawn therefrom. [3] Further, as recognized by the Fifth Circuit, to which this case would *636 be appealable, "Congress intended the [innocent spouse] exception to remedy a perceived injustice, and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive reading." Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975) (footnote omitted). See also Allen v. Commissioner,514 F.2d 908, 915 (5th Cir. 1975), revg. on other issues 61 T.C. 125 (1973). Section 6013(e)(1)(C), requires petitioner to establish that in signing a joing return with Kelly for 1975, "she did not know, and had no reason to know, that there was such substantial understatement." As we have found, petitioner graduated from high school, and then completed a two-year course of study in basic bookkeeping and bilingual secretarial skills. After a brief courtship, petitioner married Kelly, who initially impressed her as a well mannered and well dressed individual. That persona apparently evaporated, however, as Kelly quickly displayed a malevolent side in his marital relationship, to the point of threatening petitioner with physical harm. *637 We found petitioner to be a sincere and credible witness. As far as she knew, she testified, almost all of Kelly's sales were cash sales. She also testified, and we have found, that she never deposited any of the proceeds of such sales and was unaware of their total amount. While petitioner was, of course, aware of those cash proceeds which were receipted by Kelly and then posted by her, we have found that she transmitted all of those receipts to Allard, who took account of them in preparing the 1975 joint tax return for the couple. On this record, we believe that petitioner had no actual knowledge of the understatement of income which was attributable to Kelly's business in 1975. [4]
On balance, we further believe that petitioner has established that she had no reason to know of such understatement. In so holding, we are mandful that petitioner participated in the maintenance of Kelly's books and records, and that such activity ordinarily would weigh against her qualification as an innocent spouse. See Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975). *638 In this case, however, we are impressed by petitioner's diligence in making a good faith effort to ascertain the correct income attributable to the furniture business owned and operated by her husband. See Sanders v. United States,supra at 167, note 11. Thus, after determining that Kelly failed to maintain books and records for his newly-opened furniture store, petitioner offered to perform bookkeeping services for him on a part-time basis, in addition to her full-time employment with RRA. Petitioner performed such bookkeeping services, without compensation, during afternoons and Saturdays.She not only posted all receipts left for her each day by Kelly, but also persistently kept after him to try to assure that he maintained proper records and turned all of them over to her. In all of this, petitioner was confronted with her husband's recalcitrance and evasiveness at work, and with his uneven temperament and intimidation at home, resulting in the aggravation of an existing hypertensive medical condition. When petitioner took her records to accountant Allard so that he could prepare the 1975 return for the couple, she asked Allard to contact *639 Kelly with any questions regarding the business, and it was her belief that Allard had subsequently contacted Kelly. To the extent that petitioner may have had reason for concern that the records she delivered to Allard were incomplete, and might result in an understatement of tax, therefore, we believe that such concerns could reasonably have been allayed by virtue of her belief that Allard had talked to Kelly respecting the furniture store in connection with his preparation of the 1975 return for the couple. We are further influenced in the foregoing finding by two additional considerations. First, there is an absence of any extraordinary or lavish gifts or other expenditures during petitioner's marriage, which may have alerted her to the existence of substantial, omitted business income. Rather, the only gifts which Kelly presented to petitioner during their marriage were her wedding ring and a small pendant. See Sanders v. United States,supra at 167-168; Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Second, we are impressed by the brief duration of petitioner's involvement both with the omission of Kelly's business income, *640 and with Kelly himself. [5]
In sum, to insist that petitioner's involvement in the maintenance of her husband's business records alone taints her qualification as an innocent spouse in the circumstances of this case, would produce the anomalous result that she would qualify where she remained silent, but would fail to qualify where she actively intervened in an attempt to assure the propriety of her husband's business practices. Since we believe that such a result would be inconsistent with the remedial purposes of the innocent spouse provisions, we find that petitioner has met her burden under section 6013(e)(1)(C). We turn next to a consideration of the final factor under section 6013(e); that is, taking into account all of the facts and circumstances, whether it is inequitable to hold petitioner *641 liable for the deficiency attributable to the understatement of tax for 1975. Section 6013(e)(1)(D). To answer this question, we must determine whether petitioner significantly benefited from the items of gross income which were omitted on her 1975 return with Kelly. [6] It is clear that such significant benefit may be found in transfers of property even where the benefit from such transfer is received several years after the year of the omitted income, but may not be found in ordinary support provided for the putative innocent spouse. See Terzian v. Commissioner,supra at 1172; section 1.6013-5(b), Income Tax Regs. On this record, we believe that petitioner has failed to prove that she derived no significant benefit from her husband's business income which was omitted from their joint return for 1975.
*642 As we have found, the only gifts petitioner received from her husband during their marriage were her wedding ring and a small pendant. When they were divorced in September of 1976, however, petitioner became entitled to receive ten items of property enumerated in our findings.Of such ten items, respondent concedes that the first four are "inconsequential." The fifth item, known as Lot 9, Bernice Addition, had an equity of only $500, was transferred to petitioner's attorney in payment of his fees, and we likewise exclude it from consideration. We have further found that Kelly never complied with his obligations under the court's decree, as modified by later agreement, with respect to items nine and ten. We accordingly limit our consideration of the significance of the benefit received by petitioner to the remaining three items, as to which her case must fall for a conspicuous failure of proof. See Sonnenborn v. Commissioner,57 T.C. 373, 382-383 (1971). Despite petitioner's protestations on brief to the contrary, [7] petitioner's own testimony clearly discloses that she received title to the real estate in item six, pursuant to the divorce decree, *643 free and clear of debt. Moreover, petitioner offered not a shred of evidence either to establish the value of any one of these parcels, or to establish their cost, size, nature or use, such that we might reasonably assess their value. While we are sympathetic with her situation, we are unable to ignore petitioner's failure to meet her burden of establishing the insignificance of the benefit to her in receiving title to these three parcels. Furthermore, petitioner has additionally failed to meet her burden of proof with respect to item seven, which consists of part of a parcel described as Block 19 of Shelby County. As to this parcel, on which is situated a frame structure rented out by petitioner as a hobby shop for a rental of $100 per month, this record fails to disclose the value of the real estate on which such structure is built, *644 or the amount of petitioner's equity therein at the time of her divorce. [8]
As to item eight, the record shows that it was worth at least $3,000, the price at which petitioner sold the property not long after acquiring it. We further find it significant that all the above real estate was acquired by Kelly during the period he was married to petitioner, which included the year 1975, when he substantially understated his income, as we have found. We must hold that petitioner has failed to prove that she did not derive significant benefit from Kelly's misdeeds. Considering all of the *645 facts and circumstances, therefore, we must reluctantly conclude that petitioner's claim that it would be inequitable to hold her liable for tax deficiencies which concededly arose solely from Kelly's business activities, must fall for failure of proof on the foregoing, vital issue. Petitioner has not satisfied the requirements of section 6013(e)(1), as to her joint and several tax liability for 1975, and accordingly, Decision will be entered for the respondent.
[9]
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Rules of Practice and Procedure of the Tax Court, except as otherwise noted.↩
2. Our finding that petitioner was not compensated for her services is based upon the facts, first, that her joint return for 1975 fails to reflect any such compensation, and second, as stipulated by the parties, that the understatement of tax for 1975 is attributable solely to income from Kelly's furniture store.↩
3. See Gurr v. Commissioner,T.C. Memo. 1976-338↩.
4. See Shea v. Commissioner,T.C. Memo. 1984-310↩.
5. Compare Sheckles v. Commissioner,T.C. Memo. 1984-289↩, wherein we held that "It is possible that a devious husband could hide some excess income from his spouse; it is less likely that Sheckles could conceal between 41 and 68 percent of his actual earnings over a period of four years from a wife who was deeply involved in his business bookkeeping and tax reporting."
6. Previously, sec. 6013(e) explicitly required that we take into account "whether or not other spouse significantly benefited directly or indirectly from the items omitted from gross income * * *." The legislative history of the recently amended sec. 6013(e) provides that "The bill does not specifically require that the determination of whether it would be inequitable to hold the innocent spouse liable include the consideration of whether such spouse benefited from the erroneous item, but that factor should continue to be taken into account." H. Rept. No. 98-432 (March 5, 1984). We note that the instant case was briefed by both parties without regard to changes in the innocent spouse provisions under the new legislation.↩
7. Such protestations are further belied by her failure to object to any of respondent's proposed findings of fact, including the proposed finding that "Petitioner still owns the property listed in item six of the decree, which is shown to be clear and free of debt and no evidence was offered to the contrary * * *." Rule 151(e)(3).↩
8. Some months after the trial in this case, and after the record was closed, petitioner on two occasions filed motions to reopen and supplement the record herein, by proffering various third-party documents which allegedly would establish the values of items six and seven. To have granted the motions would have allowed petitioner to put in evidence on highly material matters without proper authentication and without giving respondent any opportunity to cross-examine with respect thereto. No reason for failing to offer such evidence at trial was given. The motions were denied.↩
9. Such decision will, of course, be limited to 1975, since respondent has conceded the issue of petitioner's liability as to 1974.↩