SUZANNE HINDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hinds v. Commissioner
Docket No. 41750-85.
United States Tax Court
T.C. Memo 1988-426; 1988 Tax Ct. Memo LEXIS 459; 56 T.C.M. (CCH) 104; T.C.M. (RIA) 88426; September 8, 1988. Leo M. Evans, for the petitioner. Florence M. Jones, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By notice of deficiency dated September 4, 1985, respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1977
$ 114,118.02
$ 5,705.90
1978
80,502.00
4,025.00
After concessions, [2] the sole issue for decision is whether petitioner qualifies under section 6013(e) *460 for relief from liability for part of the deficiencies and additions to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Bakersfield, California, when she filed her petition herein. She filed joint Federal income tax returns with her then husband, Dr. Ramon K. Hinds (Dr. Hinds) for both of the years at issues. Petitioner is a college graduate. She attended Pasadena City College for two years and then transferred to the University of Southern California (U.S.C.) as a piano major. She earned a Bachelor's degree in drama from U.S.C. and thereafter returned to school for one year to obtain teaching credentials. She never had any accounting, bookkeeping, or business education or training. Petitioner began teaching Kindergarten after obtaining her teaching credentials. She lived at her parents' home at their expense and used an automobile that they furnished her. Her father *461 handled all of the family's business affairs. Petitioner gave him her paychecks and he invested them for her. He also completed her tax returns. She signed them but neither read nor understood them. Petitioner married Dr. Hinds when she was 26. He controlled their financial affairs from the outset of the marriage. When she continued to teach for one year after they were married, she gave him all of her earnings. Dr. Hinds did not discuss financial matters with petitioner, nor did he maintain joint bank accounts with her. He conducted the family's financial affairs from his medical clinic. The family's bills were mailed to him there and he kept the family's financial records there. He did not bring business work home with him. He handled the financial aspects of the couple's major purchases without involving petitioner. The extent of petitioner's involvement in the couple's financial affairs was to accept money from him to use to pay household expenses and to purchase the family's food and clothing. During their marriage, petitioner and Dr. Hinds maintained an affluent lifestyle. They lived in a home with a backyard tennis court in the best neighborhood of Bakersfield. *462 They owned horses, airplanes, a boat, and a camper. They were members of a country club and a tennis club, and their six children attended private schools. Their standard of living did not increase during the years at issue above the level to which they had become accustomed. Petitioner and Dr. Hinds had marital difficulties that petitioner attributed to his drinking problems. In 1970 or 1971, petitioner visited Dr. Hinds at his clinic. He maintained a refrigerator there that contained alcoholic beverages, and petitioner went to the clinic intending to empty it. Dr. Hinds apparently resisted petitioner's efforts to reform his lifestyle, and the confrontation created what she described as "quite a disturbance." Dr. Hinds filed a petition for dissolution of their marriage on June 20, 1972. As part of the action, Dr. Hinds requested and obtained a court order enjoining petitioner from visiting his work place and interfering with his medical practice. Dr. Hinds dismissed the petition after petitioner "begged him to take [her] back" and promised that she would never "go near the clinic" or "open [her] mouth again." The dismissal of the petition did not end the couple's *463 domestic difficulties. There remained considerable friction within their household. Dr. Hinds drifted away from the family and participated in few extracurricular activities with them. Petitioner's apparent attitude caused him to want to live apart from her. Domestic violence prompted petitioner's oldest son to leave home several times. In December of 1976, petitioner opened her first checking account. She overdrew her account frequently until she was instructed how to keep track of the approximate balance in the account. She has still never balanced a checking account. Dr. Hinds had certified public accountants prepare the couple's joint Federal income tax returns for the years at issue. The certified public accountants signed the returns as paid preparers. Petitioner signed the returns when Dr. Hinds presented them to her, but she did not understand them and was unaware that they contained substantial understatements. Respondent audited the joint Federal income tax returns of petitioner and Dr. Hinds for 1977 and 1978 and determined total adjustments to the taxable income shown on the returns for those respective years of $ 408,066.39 and $ 316,292. Respondent agrees *464 that $ 400,000 of the adjustments for 1977 are attributable to his disallowance of a deduction claimed for coal royalties, which is a grossly erroneous item. Respondent further agrees that a total of $ 308,792 of the adjustments for 1978 are attributable to his disallowance of deductions of $ 300,000 for coal royalties and $ 8,792 for interest expense, both of which are grossly erroneous items. Petitioner filed a separate Federal income tax return for 1984 on which she reported a total of $ 18,000 of adjusted gross income. OPINION The sole issue for decision is whether petitioner qualifies for relief from liability under section 6013(e)(1) from the deficiencies and additions to tax attributable to the $ 400,000 and $ 308,792 of deductions for 1977 and 1978, respectively, that the parties agree are grossly erroneous items. Section 6013(e)(1) provides: (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return *465 he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. As the requirements of section 6013(e)(1) are conjunctive rather than alternative, a failure to meet any of the requirements prevents a spouse from qualifying for relief from liability under section 6013(e). Estate of Killina v. Commissioner,T.C. Memo. 1987-365. Respondent agrees that the requirements of sections 6013(e)(1)(A) and (B) are met in this case. [3] He argues, however, that petitioner has failed to prove the elements contained in sections 6013(e)(1)(C) and (D). Petitioner bears the burden of proving the two elements at issue. Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). In reaching our conclusion herein, we *466 are mindful of the fact that section 6013(e) was designed to remedy an injustice, and that we must not hinder the legislature's intent by giving the section an unduly narrow or restrictive reading. Allen v. Commissioner,514 F.2d 908, 915 (5th Cir. 1975); Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975); Estate of Killian v. Commissioner, supra.
Knowledge of Understatement
The first of the two elements that petitioner must prove is that she did not know, and had no reason to know, of the substantial understatements of tax liability due to the grossly erroneous deductions claimed for the years at issue. Sec. 6013(e)(1)(C). As we found that she had no actual knowledge of the substantial understatements, our analysis focuses on whether she had reason to know of them. The standard to be applied in determining whether a taxpayer had reason to know of a substantial understatement *467 of tax liability is whether a reasonable person in the taxpayer's circumstances could have been expected to know of the substantial understatement at the time of signing the return. Sanders v. United States, supra at 166-167; Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). A factor that is relevant in determining whether a spouse had reason to know of a substantial understatement is whether the couple's standard of living improved significantly as a result of the understatement. Mysse v. Commissioner,57 T.C. 680, 698 (1972). Petitioner and Dr. Hinds enjoyed an affluent standard of living throughout their marriage, and we found as a fact that it did not improve during the years at issue. There is no evidence of unusual or lavish expenditures during the years at issue that would have alerted a reasonable person in petitioner's position to understatements of tax. In this case, Dr. Hinds exerted near total control over the couple's financial affairs. The extent of petitioner's participation in their financial affairs was to accept money from him to use to pay household expenses and to purchase the family's food and clothing. *468 She relied on her husband to ensure that their Federal income tax returns were properly completed. She undoubtedly presumed that the returns were proper as they had been prepared by certified public accountants. Considering the fragile and strained relationship that petitioner maintained with Dr. Hinds, and her limited understanding of financial matters, we do not consider it to be unreasonable that she did not question him to determine the validity of the deductions claimed on the returns. In these circumstances, we conclude that petitioner had no reason to know of the substantial understatements contained in the returns. Equity of the Circumstances
The final element of section 6013(e) that petitioner must establish is that taking into account all the facts and circumstances it is inequitable to hold her liable for the tax deficiencies. Sec. 6013(e)(1)(D). Section 1.6013-5(b), Income Tax. Regs., states that one factor that is relevant in determining whether it is inequitable to hold a spouse liable for a deficiency is whether the spouse benefited significantly from the grossly erroneous items that caused the deficiency. [4]
*469 The record does not suggest that petitioner received any benefit other than normal support from Dr. Hinds either during or after the years at issue. As the regulations state, normal support is not a significant benefit. Sec. 1.6013-5(b), Income Tax Regs.; Terzian v. Commissioner,72 T.C. 1164, 1172 (1979). Although the support petitioner received during the years at issue concededly allowed her to maintain a relatively affluent lifestyle, we nevertheless consider it to be normal support as the lifestyle was the one to which she had become accustomed. Sanders v. United States, supra at 168. We view it as significant that there is no evidence that Dr. Hinds used the tax benefits attributable to the understatements to purchase property in which petitioner received an ownership interest. Indeed, respondent conceded as much on brief. In these circumstances, we conclude that it would be inequitable to hold petitioner liable for the deficiencies and additions to tax that resulted from the substantial understatements attributable to the grossly erroneous deductions taken during the years at issue, as agreed to by the parties. We accordingly hold that *470 petitioner has established that she meets the requirements of section 6013(e) and is relieved of liability for these deficiencies and additions. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Petitioner concedes both the amount of the deficiencies and the applicability of the section 6653(a) additions to tax determined by respondent. ↩
3. It is also apparent, and the parties appear to have attempted to stipulate, that the understatement for each year exceeds the percentage of petitioner's adjusted gross income of the preadjustment year as specified in sec. 6013(e)(4). ↩
4. Sec. 6013(e) was amended after sec. 1.6013-5(b), Income Tax Regs., was promulgated. Prior to its amendment sec. 6013(e) explicitly required that we consider "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income." Although sec. 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. See H. Rept. 98-432 (Part 2) 1501, 1502 (1984); Styron v. Commissioner,T.C. Memo. 1987-25↩ at n. 15.