KAREN C. BUCHINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARK J. BUCHINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buchine v. Commissioner
Docket Nos. 28830-89, 24147-90
United States Tax Court
T.C. Memo 1992-36; 1992 Tax Ct. Memo LEXIS 41; 63 T.C.M. (CCH) 1838; T.C.M. (RIA) 92036; January 16, 1992, Filed *41 Decisions will be entered for respondent. George W. Connelly, Jr. and Ruth E. Salek, for petitioners. William G. Bissell and Nancy Graml, for respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' income tax, increased interest, and additions to tax as follows: Increased Interest and Additions to Tax
Sec. Sec. Sec.
Sec.
Sec.
Year
Deficiency
6621(c)
6653(a)
6653(a)(1)
6653(a)(2)
6659
1978
$ 4,476
[1]
$ 224
-
-
$ 1,343
1979
1,303
[1]
65
-
-
391
1980
2,607
[1]
130
-
-
782
1981
16,407
[1]
-
$ 820
[2]
4,922
Petitioners have conceded the substantive deficiencies in income tax, increased interest, and additions to tax. After concessions, the following are issues *42 for decision. 1. Whether we can reform the Form 872-A based on consideration of extrinsic evidence showing mutual mistake by the parties. We hold that we can. Woods v. Commissioner, 92 T.C. 776, 784 (1989). 2. Whether there are sufficient extrinsic facts to show by clear and convincing evidence that the Form 872-A, applicable to 1984 on its face, does not reflect the intent of the parties, and that the parties intended the Form 872-A to apply to 1981. As discussed below, we find that there are. 3. Whether petitioners are estopped from asserting that the consent is invalid. In light of our holding above, we need not reach this issue. 4. Whether Karen Buchine is an innocent spouse within the meaning of section 6013(e)(1). We hold that she is not. References to petitioners are to Mark Buchine and Karen Buchine. All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Background
Mark Buchine lived in Houston, Texas, and Karen Buchine lived in Missouri City, *43 Texas, when they filed their separate petitions. The cases were later consolidated for trial and briefing. Petitioners were husband and wife during the years in issue. They were divorced on December 11, 1986. The divorce decree provided that Mark Buchine would be responsible for any tax liability of Karen Buchine. Mark Buchine received a bachelor's degree in accounting from Bentley College in 1973. He completed several tax courses. He worked in public accounting for a year after graduation. From 1975 through 1979, Mark Buchine sold products for General Binding Sales Corporation, Dictaphone, and Lexitron. In 1979, he sold life and disability insurance for Northwestern Mutual Life Insurance Company and homeowners and automobile insurance for Farmer's Insurance Group. He sold tax-advantaged investments from the summer of 1980 until 1984 or 1985. Other than his association with tax shelters, Mark Buchine did not represent clients before the IRS from 1973 through 1984. He also prepared returns for himself and his wife, and a few others. The deductions and credits that led to the deficiencies arose from investments in a partnership known as the Adirondack Group, and two S corporations, *44 Cal Records, Inc., and M. Lenmar, Ltd. Mark Buchine was a general partner and tax matters partner for these entities. The entities were limited partnerships and an S corporation that involved master record leases as tax shelters. Some of the recordings were by the Beatles and the Oak Ridge Boys. Mark Buchine prepared Forms K-1 for investors. He was familiar with tax shelters and TEFRA procedures for partnerships and subchapter S corporations under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. Petitioners filed joint Federal income tax returns for 1978, 1979, 1980, and 1981. The substantive adjustments in these cases involve credits and losses deducted on petitioners' 1981 return. The credits were carried back to 1978, 1979, and 1980. Mark Buchine prepared petitioners' 1981 income tax return and the Form 1045, Application for Tentative Refund, that accompanied it. 2. Special Consent to Extend the Time to Assess Tax -- Form 872-A
Petitioners filed their 1981 return on July 21, 1982. Respondent issued the notice of deficiency on September 7, 1989. On September 17, 1984, respondent mailed petitioners an original and one copy *45 of a Form 872-A, Special Consent to Extend the Time to Assess Tax (the consent on Form 872-A). Form Letter 907 (the cover letter) that accompanied the consent referred to the 1981 taxable year. The consent refers to the 1984 taxable year. Respondent enclosed IRS Publication 1035 (the publication) with the cover letter and consent. The front page of the publication states respondent's policy to identify tax returns under examination for which the statutory period is about to expire and seek a consent from the taxpayer to extend the period. Respondent intended to request petitioners to consent to extend the time to assess tax for 1981. Mark Buchine read the cover letter and the consent when he received them. He also received the publication in the same envelope. When he read the documents, he knew that it was not intended for 1984 and if it was intended to apply to a year other than 1984, that other year would probably be barred by the statute of limitations if respondent failed to discover the mistake. On September 19, 1984, Mark Buchine telephoned the number provided in the cover letter, and spoke with revenue agent Roy Fite. At that time, Mr. Fite was assigned to the examination *46 support staff where he prepared deficiency notices, and received telephone calls from and answered questions from taxpayers. When Mr. Fite received a telephone call from a taxpayer, he generally took notes, then did the required research, and provided the requested information by either telephone or mail. He also recorded the telephone contact on a contact sheet in the case file. Once he finished, he made a record on the contact sheet and discarded the notes. Mr. Fite did so with Mark Buchine's call. Mark Buchine telephoned Mr. Fite to ask for the name of the tax shelter that was under audit and which was a partner of Adirondack. At Mr. Fite's request, Mark Buchine provided Mr. Fite with his name, the taxable year 1981, and Mark Buchine's Social Security number. Mark Buchine did not provide a return telephone number because he was going to call Mr. Fite back. On the contact sheet Mr. Fite wrote petitioners' names, the date of the call, the year "8112" and "called to ask for shelter name. He was to call back, but did not. UM Leasing Corp. is under audit, which the Adirondack is a partner of. The Adirondack is not under audit." The notation "8112" refers to the 1981 taxable *47 year for calendar year taxpayers. Before signing the consent, Mark Buchine told his wife to sign it, and she did. After petitioners signed the consent on September 24, 1984, they returned it to respondent without modification. They did not communicate to respondent the possible mistake. Petitioners knew when they signed the consent that they had not yet filed their 1984 income tax return. When he signed the consent, Mark Buchine knew that it was not meant for 1984. Respondent's representative executed the consent on October 3, 1984, and returned a copy to petitioners. On October 3, 1984, respondent's representative entered the notation "872-A" under the caption "Statute Update" to post the examination status of petitioners' 1981 tax return for the Automated Information Management System (AIMS). This is respondent's routine procedure after executing a Form 872-A. It was also respondent's routine procedure to request a taxpayer to execute a second Form 872-A if respondent is aware that the first contained a material typographical error. Before July 21, 1985, respondent did not realize that the consent stated 1984 rather than 1981. Respondent issued the notice of deficiency *48 to petitioners on September 7, 1989. 3. Innocent Spouse
Karen Buchine earned bachelor's and master's degrees in education for the hearing impaired. She married Mark Buchine in 1976. Since that time, she has always worked outside the home, except for 4 months following the birth of their son, Brent. Before 1981, she worked in banks in the bookkeeping department and as a foreign currency bank teller. Her duties in the banks did not include any sophisticated transactions. She primarily did addition and subtraction and collected paperwork. In 1981, she was a public school teacher, specializing in the treatment of deaf children. Karen Buchine filed her 1988 return as a head of household. The most recent taxable year ending before the date the deficiency notice was mailed was 1988. For purposes of determining the presence of a substantial understatement under section 6013(e)(3) and (4)(B), 25 percent of that adjusted gross income amount is $ 9,598.75. During their marriage petitioners had a joint checking account in which Mark Buchine deposited his income and Karen Buchine deposited part of her income. Karen Buchine also had a separate checking account into which she deposited *49 part of her earnings. While they were married, Mark Buchine was responsible for family finances, while Karen Buchine was in charge of household expenses. Petitioners discussed how Mark Buchine's business was doing. Karen Buchine was very opposed to Mark Buchine's selling the tax shelters named in the notice of deficiency to her friends because investment in the tax shelters was risky and the Government would question whether the investment was intended to be profitable. Mark Buchine sold insurance and interests in the tax shelter entities to their friends with his wife's knowledge. Before filing the 1981 income tax return, Karen Buchine attended a meeting of potential investors held by her husband. At the meeting, there was a presentation about the master recording tax shelters. Petitioners did not discuss investments that Mark Buchine was making. During their marriage Mark Buchine was always willing to answer his wife's questions about their investments. Karen Buchine did not sign any documents related to their purchase. However, she was named as a shareholder and partner in the investment entities that were the subject of the adjustments in the notice of deficiency. Karen *50 Buchine relied on her husband to handle tax matters including preparing their income tax returns. The tax refunds from petitioners' 1981 return and carrybacks to 1978 through 1980 were deposited in their joint checking account. They were used for household expenses such as monthly bills, credit card bills, utilities, mortgage, and automobile expenses. Petitioners filed joint returns for the years in issue. OPINION 1. Petitioners' Consent to Extend the Period to Assess Tax -- Form 872-A
The first issue for decision is whether there are sufficient extrinsic facts to show by clear and convincing evidence that the Form 872-A, applicable on its face in 1984, does not reflect the intent of the parties, and was intended to apply to 1981. The statute of limitations for taxable years 1978, 1979, and 1980 is determined under section 6501(j). The parties agree that if the statute of limitations is open for 1981, it is also open for 1978, 1979, and 1980. Petitioners filed their Federal income tax return for taxable year 1981 on July 21, 1982, and respondent mailed a statutory notice of deficiency for 1981 on September 7, 1989. Absent substantial underreporting of income, or an *51 extension of the limitations period, the 3-year period for timely assessment would have expired on July 21, 1985. Sec. 6501(a). Thus, petitioners have made a prima facie showing that assessment of the subject deficiencies is barred. Upon such a showing, respondent has the burden of going forward with evidence to show that the bar of the statute of limitations is not applicable. Woods v. Commissioner, 92 T.C. 776, 779 (1989); Adler v. Commissioner, 85 T.C. 535, 540 (1985); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Assessment against petitioners for taxable year 1981 is not barred under section 6501(a) if the parties agreed to extend the period for assessment beyond the date the notice was issued. Section 6501(c)(4) provides: (4) Extension by Agreement. Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period *52 so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
Thus, the parties may extend the time to assess taxes. Such an agreement is not a contract, but rather a unilateral waiver of a defense by the taxpayer. Strange v. United States, 282 U.S. 270 (1931); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). Contract principles are significant, however, because section 6501(c)(4) requires the consent to be a written agreement between the parties. Piarulle v. Commissioner, supra at 1042. An "agreement" is a manifestation of mutual assent, although consideration is not required. Piarulle v. Commissioner, supra.
The consent form itself, rather than transmittal letters, expresses the mutual assent of the parties. See Marx v. Commissioner, 13 T.C. 1099, 1105 (1949); Sager v. Commissioner, T.C. Memo. 1988-193. However, we have looked to the transmittal letter as evidence of the intent of the parties. See Hicks v. Commissioner, T.C. Memo. 1991-564. Respondent *53 contends that the Form 872-A should be reformed on mutual mistake grounds to apply to 1981 rather than 1984. Petitioners argue that reformation is improper because the Court does not have the power to reform the Form 872-A in this case and because there was no underlying agreement to which Form 872-A should be reformed. In Woods v. Commissioner, supra at 784-785, we said that we could not expand our jurisdiction by providing equitable relief from statutory requirements. However, we can apply equitable principles to decide cases that come within our statutorily prescribed jurisdiction. Woods v. Commissioner, supra at 784-785. Here it is clear that this case comes within our statutorily prescribed jurisdiction. Thus, we may apply equitable principles to decide the case. As we noted in Woods v. Commissioner, supra at 782: "Reformation is an equitable remedy used to reframe written contracts to reflect the real agreement between the parties when, because of mutual mistake, the writing does not embody the contract as actually made." (Citations omitted.) Reformation is proper for a mistake in drafting. Woods v. Commissioner, supra. *54 The mutual mistake here is a "scrivener's mistake". See Woods v. Commissioner, supra; Newton v. Brown, 386 N.W.2d 424 (Neb. 1986). We are persuaded by clear and convincing evidence that the writing contains a scrivener's mistake and that reformation is warranted. Woods v. Commissioner, supra at 789; 1 Restatement, Contracts 2d, sec. 155, comment c (1981). We may consider the intention of the parties as shown by extrinsic evidence to determine the effect of the instrument. Woods v. Commissioner, supra at 784; Atkinson v. Commissioner, T.C. Memo. 1990-37. Mark Buchine testified that he thought and intended that the consent Form 872-A applied to 1984. However, here, as in other cases where we must decide a taxpayer's intent, we give greater weight to the objective facts than to a taxpayer's mere statement of intent. See, e.g., Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). There are several extrinsic facts which we believe show that petitioners expected, intended, and had *55 every reason to be on notice that the Form 872-A signed in 1984 applied to 1981. Mark Buchine was a college graduate with a degree in accounting. His curriculum included tax courses. He had worked in public accounting. He had prepared income tax returns for himself and others. He sold tax shelters and was a tax matters partner or general partner for some of them when he received the Form 872-A. He was familiar with the TEFRA partnership and S corporation audit and litigation provisions. Consequently, we conclude that he had a good working knowledge of many aspects of income tax law and procedure. We conclude that Mark Buchine knew that the Form 872-A signed in 1984 would not have been an extension for 1984 because petitioners had not yet filed their Federal income tax return for 1984. The period for assessment of tax does not begin to run until the tax return for the year is filed. Sec. 6501(a). Petitioners did not file their return for 1984 until July 2, 1985. Since in November 1984 the period for assessment of tax had not begun, it makes no sense that the parties would seek to extend it. We are convinced that Mark Buchine understood this. Petitioners argue that the *56 consent form signed in 1984 could apply to taxable years other than 1981, such as 1982 or 1983. We find that Mark Buchine's knowledge of income taxes gave petitioners every reason to know the consent signed in 1984 applied to 1981. Section 6501(c)(4) provides authority for the Commissioner to reach agreements with taxpayers to extend the period to assess tax. The Commissioner's policy for securing a consent under section 6501(c)(4) is stated in Rev. Proc. 57-6, 1957-1 C.B. 729. Rev. Proc. 57-6 states that respondent will not ordinarily seek a consent unless respondent will have difficulty completing an examination within the statutory period for assessment. This implies that the Commissioner's policy is to generally seek consents near the end of the 3-year period following the filing or due date of a taxpayer's return. Mark Buchine had sufficient knowledge of tax procedures to be aware of the 3-year limitation, and that requests to extend it usually occur near the end of the 3 years. The cover letter that accompanied the Form 872-A states that "the limitation period prescribed by law for assessing additional tax is due *57 to expire soon". Mark Buchine read the cover letter, and we are persuaded that he understood that the Form 872-A was for 1981, not 1984. The cover letter that accompanied the Form 872-A referred to 1981. Before petitioners signed the Form 872-A, Mark Buchine was aware that the cover letter said that the Form 872-A was intended to apply to 1981. Mark Buchine telephoned respondent's agent by dialing the telephone number on the cover letter that accompanied the Form 872-A. In that telephone conversation, Mark Buchine specifically identified taxable year 1981. This indicates that Mark Buchine intended the Form 872-A to apply to 1981. We are convinced by clear and convincing evidence that there was an actual agreement and that the writing contains a "scrivener's mistake". Woods v. Commissioner, supra at 789 n.14. Under the facts and circumstances of this case, we hold that the Form 872-A is effective; thus, assessment and collection of the deficiency in tax for 1981 is not barred by the statute of limitations. 2. Innocent Spouse Under Section 6013(e)
Karen Buchine argues that she has satisfied all of the requirements for innocent spouse relief under *58 section 6013(e). Respondent argues that Karen Buchine did not meet her burden of proving: (1) That the understatement was attributable only to her husband Mark Buchine; (2) that she did not know or had no reason to know of the understatement; and (3) that she did not receive significant benefit from the understatement. A husband and wife who file a joint return are jointly and severally liable for the tax due on their joint income and for any resulting additions to tax. Secs. 6013(d)(3), 6662(a)(2). However, section 6013(e) provides that a spouse may be relieved of joint and several liability in certain circumstances. To obtain relief under section 6013(e), the person asserting innocent spouse status must prove that: (1) A joint return was filed for the year; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return; (3) the spouse desiring relief did not know, and had no reason to know, of the substantial understatement when signing the return; and (4) taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency. Sec. 6013(e)(1). A taxpayer *59 must prove compliance with each of these provisions. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Sonneborn v. Commissioner, 57 T.C. 373, 381 (1971). However, we are mindful that in enacting section 6013(e) Congress "intended the exception to remedy a perceived injustice, and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive reading". Sanders v. United States, 509 F.2d 162, 166 (5th Cir. 1975); accord Allen v. Commissioner, 514 F.2d 908, 915 (5th Cir. 1975), affg. in part, revg. in part and remanding 61 T.C. 125 (1973). Karen Buchine's "preadjustment year" for purposes of section 6013(e)(4)(C) is 1988 and her adjusted gross income for that year is $ 38,395. Thus, for purposes of determining the presence of a substantial understatement under section 6013(e)(3) and (4)(B), 25 percent of that adjusted gross income amount is $ 9,598.75. a. Joint Return
Karen Buchine filed a joint return for the years at issue and meets the requirements of section 6013(e)(1)(A). b. Grossly *60 Erroneous Items
Respondent concedes that the understatement is attributable to grossly erroneous items. Sec. 6013(e)(1)(B). However, respondent asserts that Karen Buchine failed to show that the substantial understatement was attributable to items of only petitioner Mark Buchine. Respondent argues that Karen Buchine was a joint shareholder of one of the tax shelters and was a partner in another. Respondent also argues that Karen Buchine participated in a promotional meeting. We recognize that Karen Buchine's name appears as a shareholder of M. Lenmar Limited, Inc., and as a partner of the Adirondack Group, two entities for which credits and deductions were disallowed in the notice of deficiency. However, we believe that she did not know that she was named on the Forms K-1 in these capacities. She did not sign any documents relating to the entities. We believe that Karen Buchine's attendance at the promotional meeting was more of a social matter than a business involvement. We conclude that Karen Buchine has shown that the substantial understatement was attributable to grossly erroneous items of her husband. c. Knowledge of the Understatement
Petitioner must establish *61 that in signing the return she did not know, and had no reason to know, that a substantial understatement existed. Sec. 6013(e)(1)(C). Respondent argues that Karen Buchine's testimony that she had no actual knowledge of petitioners' investments is contrary to the evidence. We agree. The lack of knowledge or reason to know of the understatement is of the transaction itself, and not of the tax consequences resulting from the transaction. Bokum v. Commissioner, 94 T.C. 126, 148 (1990); Smith v. Commissioner, 70 T.C. 651, 673 (1978). Karen Buchine had actual knowledge of the transactions. Mark Buchine freely answered questions by Karen Buchine about his business. She was very opposed to his selling the tax shelters named in the notice of deficiency to her friends. She feared that the Government would question whether the investment was intended for profit. She was present at at least one tax shelter promotional meeting. She knew of her potential tax liability, and her divorce decree required Mark Buchine to indemnify her in the event of any tax liability. We conclude that Karen Buchine had actual knowledge that a substantial understatement *62 existed under section 6013(e)(1)(C). Even if Karen Buchine had no actual knowledge, we believe that she had reason to know of the substantial understatements. The test to decide whether a taxpayer had reason to know of the substantial understatements is whether, at the time of signing the returns, a reasonable person in the taxpayer's circumstances (e.g., intelligence, emotional state, level of involvement in the financial transactions giving rise to the income) could have been expected to know of the substantial understatements. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue T.C. Memo. 1984-310; Sanders v. United States, 509 F.2d 162, 166-168 (5th Cir. 1975). However, a spouse may not close his or her eyes to unusual or lavish expenditures which might have alerted him or her to unreported income, Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972), because section 6013(e) is designed *63 to protect the innocent, not the intentionally ignorant. Hayes v. Commissioner, T.C. Memo. 1989-327. Karen Buchine was well educated. She had worked for a bank. She was a signatory to the two family bank accounts and had complete access to the family bookkeeping. She knew her husband sold tax shelters. She knew enough about them that she disapproved of his selling them to her friends. She signed a claim for refund of $ 8,386 involving investments in tax shelters named in the notice of deficiency. She testified that she recalled receiving the refund checks. On this record, we conclude that Karen Buchine knew enough about the tax shelters that a duty to inquire should be imposed on her. Consequently, she should have known of the substantial understatement. d. Inequitable to Hold Petitioner Liable
In deciding whether it is inequitable to hold a spouse liable for a deficiency, we take into account whether the person desiring relief as an innocent spouse significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), *64 affd. 826 F.2d 470 (6th Cir. 1987); H. Rept. 98-432 (Part 2) 1501, 1502 (1984); sec. 1.6013-5(b), Income Tax Regs.
Normal support is not a "significant benefit" for purposes of determining whether it is inequitable to hold petitioner liable for the deficiency. Terzian v. Commissioner, supra at 1172; Hayes v. Commissioner, supra; sec. 1.6013-5(b), Income Tax Regs. Normal support is determined by the circumstances of the parties. Sanders v. United States, supra at 168; Flynn v. Commissioner, 93 T.C. 355, 367 (1989). Karen Buchine asserts that she only received normal support. However, she did not provide the Court with any objective evidence to convince us of her assertion such as values of specific assets and expenditures or tracing the benefit received. See Bokum v. Commissioner, supra at 157. We do know that the refund checks were deposited in petitioners' joint checking account. We are not persuaded that she did not benefit directly or indirectly from the tax benefits. Karen Buchine did not persuade us that she did not have actual knowledge *65 or reason to know of the substantial understatements, and that it would be inequitable to hold her liable for the deficiencies, increased interest, and additions to tax. We hold that she is not entitled to relief as an innocent spouse under section 6013(e). We note, however, that under the divorce decree, she may be entitled to indemnity from Mark Buchine. For the foregoing reasons, Decisions will be entered for respondent. Footnotes
1. One hundred twenty percent of the interest due on the underpayment. ↩
2. Fifty percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules or regulations.↩