ESTATE OF JERRY B. KILLIAN, DECEASED, MARJORIE E. KILLIAN, EXECUTRIX, AND MARJORIE E. KILLIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Killian v. Commissioner
Docket Nos. 21544-85; 29841-85.
United States Tax Court
T.C. Memo 1987-365; 1987 Tax Ct. Memo LEXIS 365; 53 T.C.M. (CCH) 1438; T.C.M. (RIA) 87365; July 23, 1987. Charles Wist, for the petitioners. David H. Peck and David E. Whitcomb, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 653(a)[1]
Sec. 6653(a)(2)
1981
$ 14,840.66
$ 742.03 *
1983
4,889.00
-
-
* 50 percent of the interest due on an unspecified underpayment. [2]
Respondent determined also that the entire underpayment for 1981 is subject to interest *367 at a rate determined under section 6621(d). [3]
After concessions, [4] the sole issue for decision is whether petitioner Marjorie E. Killian qualifies for relief from liability for the deficiency and additions to tax for 1981 under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Marjorie E. Killian ("petitioner") and her deceased husband Jerry B. Killian ("Jerry") resided in Houston, Texas, during 1981, and petitioner was a resident of Houston when she filed the petition for 1981. Petitioner and Jerry filed a joint Federal income tax return for 1981. Petitioner married Jerry in 1967. She was 23 and he was 35. She had her first child in 1968, and had another in 1971. In January 1981, she began work as a junior high *368 school reading teacher. Jerry was a pilot in the military. Petitioner has a bachelor's degree in literature, and has no tax or business background. She trusted Jerry completely to manage their financial affairs in a way that would benefit their family. He handled all of the couple's banking during 1981. The only financial matter Jerry discussed with petitioner was the amount of money she was allotted to run the household. In December 1981, Jerry invested in a small business corporation. The investment gave petitioner and Jerry a community property interest in an entity that allegedly dealt in forward contracts for mortgage-backed securities. The alleged contracts for mortgage-backed securities were shams designed merely for tax avoidance purposes. Jerry did not discuss the investment with petitioner. She was totally unaware of the investment and what Jerry expected it to accomplish. Jerry claimed a $ 36,396 loss from the small business corporation on the 1981 joint Federal income tax return. Jerry had the 1981 return prepared by the family's certified public accountant, and presented the completed return to petitioner for her signature. She noticed the $ 11,756 refund *369 claimed on the return and questioned Jerry about it. She signed the return only after he explained that the refund was due to long-term investments that their certified public accountant had recommended. She did not ask for details as she trusted Jerry and the certified public accountant to properly prepare the return. Petitioner did not know that the return contained a substantial understatement of tax. On April 24, 1982, the Killians were paid the $ 11,756 refund they had claimed on their 1981 return. Petitioner asked Jerry whether she could spend any of the refund on things she wanted to do around the house, and whether they could take a trip to Barbados. He told her no, and explained that the refund had to be used to pay loans and to make other investments. On April 26, 1982, $ 12,200 was deposited into the Killian's joint checking account. On April 27, 1982, Jerry wrote two checks drawn on the joint account in the total amount of $ 4,810.28 to pay loans he had obtained in November and December of 1981. On September 23, 1982, Jerry wrote an $ 8,244 check on the joint account and deposited it into checking account number XX-X229-3 at the First City Bank of Clear Lake, *370 Houston, Texas. Jerry maintained the account in the name of Alpha One. Alpha One was a limited partnership formed to investment in a government securities trading program. The trading program was unprofitable, there were margin calls, and the cash in Alpha One account was exhausted. The tax refund did not improve the couple's standard of living. They did not take any vacations in 1981, 1982, or 1983, and they did not use the refund to purchase a new car, or other expensive items. Jerry died testate on March 27, 1984. Petitioner was the sole beneficiary under his will and received all of his property. She did not inherit any money from his account number XX-X229-3 at the First City Bank of Clear Lake. None of the real and personal property she inherited from him was purchased with the 1981 tax refund. Respondent audited petitioners' 1981 return and determined that petitioners were not entitled to deduct the claimed $ 36,396 loss. OPINION The sole issue for decision is whether petitioner qualifies for relief from liability for the deficiency and additions to tax resulting from respondent's disallowance of the $ 36,396 loss deduction claimed on their 1981 return. Section *371 6013(d)(3) establishes that filers of joint returns are generally jointly and severally liable for the tax due on their aggregate income. When its provisions are met, however, section 6013(e)(1) permits a spouse who files a joint return to be relieved of liability. Section 6013(e)(1) provides: (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. As the requirements of section 6013(e)(1) are *372 conjunctive rather than alternative, a failure to meet any of the requirements prevents a spouse from qualifying for relief from liability under section 6013(e). Levin v. Commissioner,T.C. Memo. 1987-67. The parties agree that petitioner meets two of the elements of section 6013(e)(1) in that she filed a joint return for 1981, and the $ 36,396 loss claimed on the return was a grossly erroneous item that caused a substantial understatement of tax. [5] Petitioner has the burden of proving the three remaining elements. Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). Those three elements are: (1) That the grossly erroneous item was attributable to Jerry; (2) that petitioner in signing the return did not know, and had no reason to know, of the substantial understatement; and (3) that it is inequitable to hold petitioner liable for the deficiency in tax attributable to the substantial understatement.
Attribution of Deduction
The first requirement of section 6013(e)(1) *373 that petitioner must establish is the portion of the grossly erroneous deduction that is attributable to Jerry. Sec. 6013(e)(1)(B). Respondent asserts that a portion of the loss deduction is attributable to petitioner under Texas community property laws, and that she fails to qualify to be relieved from liability for the tax attributable to that portion. Respondent's argument has superficial appeal. The Killians were residents of Texas, a community property state, and the parties agree that petitioner and Jerry held a community property interest in the investment that purportedly generated the alleged loss. [6] Under Texas law, each spouse owns a one-half interest in all community property regardless of which spouse manages and controls the property. Carnes v. Meador,533 S.W.2d 365, 371 (Tex. Ct. App. 1975). Petitioner therefore owned a one-half interest in the investment, and had a one-half interest in the income and deductions that the investment produced. Allen v. Commissioner,514 F.2d 908, 914 (5th Cir. 1975). *374 Respondent's argument, however, ignores the fact that in this case no actual loss was produced to be shared by petitioner under Texas community property laws. As the parties stipulated, the transactions that purportedly generated the alleged loss were shams. It is well settled that sham transactions do not create actual losses. Price v. Commissioner, 88 T.C.    (April 9, 1987); Glass v. Commissioner,87 T.C. 1087, 1177 (1986). Cf. Helvering v. Gregory,69 F.2d 809, 811 (2d Cir. 1934), affd. 293 U.S. 465 (1935). We accordingly conclude that Texas community property laws do not attribute any of the nonexistent loss to petitioner. [7] It is clear that the claimed deduction is attributable entirely to Jerry. The deduction was wholly the result of Jerry's independent decision. It is equally clear that the claimed deduction was frivolous, fraudulent or "phoney," [8] and thus had no basis in fact or law within the meaning of section 6013(e)(2)(B). See Douglas v. Commissioner,86 T.C. 758, 762-763 (1986). *375 Having concluded that section 6013(e) applies potentially to the entire $ 36,396 deduction, we must next determine whether petitioner has proved the two elements remaining at issue that would qualify her for relief from liability for the tax attributable to that deduction. In reaching our determinations, we are mindful of the fact that section 6013(e) was designed to remedy an injustice, and that we must not hinder the legislature's intent by giving the section unduly narrow or restrictive reading. Allen v. Commissioner, supra at 915; Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975). Knowledge of Understatement
The first of the two elements is that petitioner did not know, and had no reason to know, of the substantial understatement of tax liability attributable to Jerry's portion of the deduction. Sec. 6013(e)(1)(C). We have found that petitioner had no actual knowledge of the substantial understatement. Our analysis therefore focuses on whether she had reason to know of the substantial understatement. The standard to be applied in determining whether a taxpayer had reason to know of a substantial understatement of tax *376 liability is whether a reasonable person in the taxpayer's circumstances could have been expected to know of the substantial understatement at the time of signing the return. Sanders v. United States, supra at 166-167; Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). In this case, Jerry conducted the family's business affairs. The extent of petitioner's participation in their financial matters was her payment of household bills. She presumed, as would women of similar experience and temperament, that Jerry would complete their Federal income return properly. She similarly presumed that the return was proper and it was prepared by a certified public accountant. Petitioner did not simply ignore the deduction. She instead questioned Jerry about the source of the refund and signed the return only after Jerry assured her that it was due to an investment that had been recommended by the certified public accountant who had prepared the return. In these circumstances, we conclude that petitioner took reasonable steps to determine the accuracy of the return, and that she had no reason to know of the substantial understatement. Equity of the *377 Circumstances
The final element of section 6013(e) that petitioner must establish is that taking into account all the facts and circumstances it is inequitable to hold her liable for the tax deficiency. Sec. 6013(e)(1)(D). Section 1.6013-5(b), Income Tax Regs., states that on factor that is relevant in determining whether it is inequitable to hold a spouse liable for a deficiency is whether the spouse significantly benefited from the grossly erroneous item that caused the deficiency. [9]
Petitioner did not significantly benefit from the grossly *378 erroneous deduction. Jerry refused to allow her to spend any of the tax refund that resulted from the deduction and he did not use the refund to improve their lifestyle. The evidence indicates that he instead used the refund to pay the loans he had obtained to finance the investment that formed the basis for the deduction, and to make an unsuccessful investment in a limited partnership. Although the tax refund may have helped Jerry provide petitioner with normal support, normal support is not a significant benefit. Sec. 1.6013-5(b), Income Tax Regs. See Terzian v. Commissioner, supra at 1172; Mysse v. Commissioner,57 T.C. 680, 699 (1972). In these circumstances, we conclude that it would be inequitable to hold petitioner liable for the deficiency in tax attributable to the substantial understatement which resulted from the loss claimed. We accordingly hold that petitioner has established that she meets the requirements of section 6013(e) and is relieved of liability for the deficiency in tax from the disallowed deduction. Decisions will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. The parties agree that the entire underpayment is due to negligence or disregard of rules or regulations for purposes of computing the sec. 6653(a)(2) addition.↩
3. Sec. 6621(d) was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750. ↩
4. Petitioners have conceded the deficiency and additions to tax determined for 1981. Respondent has conceded that there is a $ 1,282 overpayment of tax for 1983. ↩
5. The parties agree also that the understatement exceeds the percentage of Jerry's adjusted gross income for the preadjustment year as specified by sec. 6013(e)(4). ↩
6. Under Texas law, community property consists of all "property, other than separate property, acquired by either spouse during marriage." Tex. Fam. Code Ann. sec. 5.01(b) (Vernon 1975). Separate property is limited to: (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. [Tex. Fam. Code Ann. sec. 5.01↩(a) (Vernon 1975).] 7. Having concluded that Texas community property laws do not attribute a portion of the loss deduction to petitioner, we need not address petitioner's argument that sec. 6013(e)(5) prevents the community property laws from applying to attribute part of the deduction to her. ↩
8. See H. Rept. 98-432 (Part 2), on H.R. 4170 (Tax Reform Act of 1984) at 1502 (1984). ↩
9. Sec. 6013(e) was amended after sec. 1.6013-5(b), Income Tax Regs., was promulgated. Prior to its amendment sec. 6013(e) explicitly required that we consider "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income." Although sec. 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. See H. Rept. 98-432 (Part 2) 1501, 1502 (1984); Styron v. Commissioner,T.C. Memo. 1987-25↩ at n. 15.