In re Patricia Marie BLANCO, Debtor.

Bankruptcy No. 92–16701–8P3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 22, 1994.

B. Gray Gibbs, Tampa, FL, for debtor.

Terry E. Smith, Bradenton, FL, Trustee.

Mary Apostolakos Hervey, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER ON OBJECTION TO CLAIM OF THE UNITED STATES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 13 case and the matter under consideration is an Amended Objection to a Claim filed by the United States of America, through the Internal Revenue Service (IRS). The Objection was filed by Patricia Marie Blanco (Debtor), and is based on the contention that she should be absolved of the tax liabilities claimed by the IRS. The Debtor seeks relief from the tax liabilities under the "innocent spouse" provision afforded by § 6013(e) of the Internal Revenue Code. The relevant facts as they were established at the duly noticed evidentiary hearing are as follows:

The Debtor and her former husband, Michael Ortabello, were married in January 1983. The couple separated in February 1986 and divorced in January 1988.

During 1983 and 1984, the Debtor worked nights for the United States Postal Service. The Debtor's former husband, Mr. Ortabello, sold insurance for the New York Life Insurance Company, and operated an insurance brokerage business out of the couple's home, where he maintained an office. Mr. Ortabello maintained all business records for his insurance brokerage business and it is without serious dispute that the Debtor was aware of the business operated by Mr. Ortabello but did not participate in the business to any extent.

The Debtor and Mr. Ortabello filed joint federal income tax returns for the tax years 1983 and 1984. Those returns were prepared by Randall Reid, an accountant, and were signed by the Debtor and Mr. Ortabello. (Debtor's Exhs. 2 and 3) Both the Debtor and Mr. Ortabello provided the accountant with the relevant information needed to prepare the returns. Mr. Ortabello reviewed the returns prior to signing them. According to the Debtor, she only reviewed them briefly. The returns were timely filed and requested refunds in the amounts of $3,522.66 and $3,802.82, respectively. In due course, the IRS refunded the claimed amount. The Debtor and Mr. Ortabello used the refunds to purchase a bigger diamond engagement ring for the Debtor, to pay off joint debts, and they also spent $2000 on a vacation in Mexico during the spring of 1984.

In late 1985, the IRS audited the joint income tax return for the tax year 1983. The Debtor was aware of this audit. During the audit, Mr. Ortabello supplied the revenue agent conducting the audit with records the couple had maintained in order to support the returns.

As a result of the audit, the agent made the following adjustments to the 1983 return: (1) added unreported income in the amount of $260.00; (2) disallowed home mortgage interest in the amount of $1,068.00; (3) disallowed Schedule C deductions in the amount of $3,055.00; and (4) made miscellaneous automatic adjustments as a result of the changes set forth in items (1) through (3). The adjustments resulted in an increased tax liability of $962.00. Mr. Ortabello advised the Debtor of the additional liability.

With respect to the unreported income, the Debtor admits that she generated unreported interest income in the amount of $46.00 and ordinary income in the amount of $58.00. Also, the Debtor and Mr. Ortabello do not deny receiving royalty income in the amount of $156.00, but admit that they were not aware of the source of the royalty payment.

The agent disallowed part of the home mortgage interest deductions and part of the Schedule C business deductions claimed on the return because the taxpayers failed to produce adequate receipts to substantiate the deductions in full.

The couple's 1984 joint income tax return was also audited. Despite notice and knowl-

edge by both the Debtor and Mr. Ortabello, however, neither attended the audit. As a result, the IRS was not provided with receipts to substantiate the deductions, interest, and credit claimed on the 1984 return. Accordingly, the claimed Schedule C deductions, mortgage interest, as well as an investment tax credit due to the installation of solar panels in the couple's home, were all disallowed in full.

The agent made the following adjustments to the 1984 return: (1) disallowed home mortgage interest in the amount of $3,218; (2) disallowed Schedule C deductions in the amount of $3,674; (3) disallowed an investment tax credit in the amount of $607.56; and (4) made miscellaneous automatic adjustments as a result of the changes in (1) through (3). The adjustments resulted in an increased tax liability of $7,424.00.

On October 28, 1986, statutory notices of deficiency were sent to the couple's "last known address." Subsequently, audit assessments were made against the Debtor and Mr. Ortabello in accordance with the audits.

At the evidentiary hearing, Mr. Ortabello testified that all of the credits, deductions, and interest reported on the returns were attributable to expenses actually incurred and paid by the Debtor and him during 1983 and 1984. However, neither the Debtor nor Mr. Ortabello had retained the documentation to substantiate them. The Debtor testified that she was unaware of whether the expenses were actually incurred. A revenue agent testified that all of the deductions, interest, and credits on the returns would have been allowed had the Debtor or Mr. Ortabello provided adequate receipts to substantiate that the expenses were incurred or paid. It is important to note that the Debtor did not offer into evidence her income tax return for the tax year 1985.

On June 25, 1986 the Debtor filed a voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. That case was closed on March 25, 1987. On December 29, 1992 the Debtor filed a voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code.

The IRS filed a timely Proof of Claim. The IRS claims that the Debtor owes the IRS the amount of $20,190.69 due to unpaid income tax liabilities incurred during the 1983 and 1984 tax years. On August 9, 1993, the Debtor filed an Amended Objection to the claim of the IRS. In the Objection, the Debtor contends that she is entitled to relief from the tax liabilities because she qualifies as an "innocent spouse," pursuant to § 6013(e) of the Internal Revenue Code.

In opposition, the IRS argues that the Debtor cannot be afforded relief under § 6013(e), because she failed to demonstrate: (1) that on each return there was a substantial understatement of tax attributable to grossly erroneous items of one spouse; (2) that the Debtor had no reason to know of such understatements; and (3) that it would be inequitable to hold the Debtor liable for the tax liabilities.

Where a joint return is filed, the parties signing the return become jointly and severally liable for the tax due. 26 U.S.C. § 6013(d)(3). Under limited circumstances, however, § 6013(e) relieves a spouse of joint tax liability if he or she proves the requirements set forth in the statute. Section § 6013(e) provides in pertinent part as follows:

**(e) Spouse relieved of liability in certain cases**

(1) In general—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know and had no reason to know, that there was such substantial understatement, and

(D) taking into account all of the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

■ The purpose of the "innocent spouse" provision is to protect one spouse from the overreaching or dishonesty of the other. *Purcell v. Commissioner,* 826 F.2d 470 (6th Cir.1987). A taxpayer cannot avoid joint and several liability, however, because he fails to review his income tax return before signing it, because the provision protects the innocent and not the ignorant. *Erdahl v. Commissioner,* 930 F.2d 585 (8th Cir.1991). The taxpayer bears the burden of proving each of the elements by a preponderance of the evidence and must prove all of the elements in § 6013(e). *Purcell, supra.*

The record is clear that the unreported tax liability for both years is made up of four components: 1) disallowed Schedule C deductions related to Mr. Ortabello's insurance business; 2) disallowed deductions related to payments of interest on the home mortgage; 3) a disallowed investment credit related to the installation of solar heating; and 4) unreported income based on unspecified royalty income, as well as unreported interest and ordinary income of the Debtor.

There is no question that the Debtor and Mr. Ortabello filed a joint return. The difficulty, however, stems from the fact that § 6013(e) only permits the defense of the innocent spouse, if the party asserting the defense did not know and had no reason to know of the substantial understatement of the tax liability. The Circuit Court of Appeals in this Circuit explained in *Stevens v. Commissioner,* 872 F.2d 1499 (11th Cir. 1989), that a spouse has reason to know of a substantial understatement if a "reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." The court in *Stevens* explained that the focus should be on whether the spouse seeking relief under § 6013(e) had "sufficient knowledge of the facts underlying the claimed deductions such that a reasonably prudent person in the tax-

payer's position would question seriously whether the deductions were phony."

■ Courts consider several factors in determining whether the nonculpable spouse had reason to know of the substantial understatement, including: (1) the level of education of the spouse seeking relief under § 6013(e); (2) his or her participation in the business affairs or bookkeeping; (3) unusual or lavish expenditures when compared to prior levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. *See Stevens, supra; Sanders v. United States,* 509 F.2d 162 (5th Cir.1975).

■ In the present instance, the Debtor admitted that unreported interest income in the amount of $46.00 and unreported ordinary income in the amount of $58.00 were attributable to her, and she failed to produce any evidence regarding undocumented unspecified royalty income. Based on these assertions, the Debtor failed to demonstrate that she had no reason to know about the understatement of tax due to the underreporting of income.

■ In addition, based on the fact that the Debtor and her former husband made mortgage payments on the marital home for which they claimed a deduction, it is reasonable to infer that the Debtor was fully cognizant of the fact that the mortgage payments included amounts applied to both principal and interest, amounts which she could have easily ascertained from the holder of the mortgage. Accordingly, this Court is satisfied that she was under a duty to confirm the accuracy of the claimed deductions attributable to the mortgage interest payments. Similarly, she had the obligation to obtain the necessary documentation and verify the propriety of the investment credit deduction because she could have easily obtained the amounts invested in the solar panels. In sum, the Debtor's claim that she did not have the necessary information and could not obtain the necessary documentation to substantiate the claimed deductions or justify the unreported income is unacceptable.

■ This record warrants the finding that the Debtor was not involved in her husband's insurance business. While she had no basis to know the precise accuracy of the business deductions claimed by her husband, she certainly was aware that they were claimed on the returns and certainly was aware that her husband had no documentation to substantiate the claims of deductions. Moreover, in order to satisfy the claim of "innocent spouse" she had the burden that the understatement had to be attributable to a "grossly erroneously" items by her husband.

■ Section § 6013(e)(2) defines a "grossly erroneous" item as a claim of deduction, credit, or basis by the other spouse for which there is no basis in fact or law. A deduction has no basis in law if the expense does not qualify as deductible and no substantial legal argument can support the deduction. *Douglas v. Commissioner,* 86 TC 758, 1986 WL 22118 (1986). Moreover, the mere disallowance of deductions due to lack of adequate substantiation does not trigger innocent spouse relief, absent proof that the deductions or credits did not have substantial legal basis. Examples of grossly erroneous deductions include deductions which are "fraudulent, frivolous, phony, or groundless." *Stevens, supra.* In the instant case, a revenue agent testified that the Schedule C deductions would have been allowed had the Debtor or Mr. Ortabello provided adequate substantiation. For this Court to determine that the Schedule C deductions were not based in law, the Debtor would need to show that the business expenses asserted would not have resulted in allowable deductions even if payment was substantiated. The Debtor did not.

The fact that the taxpayers had insufficient records to substantiate the business expenses might imply that the expenses asserted were not actually incurred and therefore not based in fact, however the Debtor testified that she had no knowledge concerning whether or not the expenses were actually incurred. The Debtor failed to demonstrate that the expenses were not actually paid, and therefore this Court is satisfied that the Schedule C deductions claimed on the 1983 and 1984 returns were also based in fact and would have been supported by law if properly documented. Accordingly, this Court is satisfied that the Debtor has failed to establish that there was any substantial understatement of tax attributable to grossly erroneous items of one spouse.

■ Considering the final requirement of § 6013(e), that it would be inequitable to hold the innocent spouse liable for the deficiency in tax to the extent it is attributable to such substantial understatement, a primary factor courts consider is whether the Debtor benefitted from the substantial understatement. *Purcell, supra.* The Debtor and Mr. Ortabello received refunds for the tax years 1983 and 1984 in the amounts of $3,522.66 and $3,802.82, respectively; and the tax liabilities asserted by the IRS for 1983 and 1984 are $962.00 and $7,424.00, respectively. Based on the fact that the Debtor and former husband used the refunds in part to pay for a $2000.00 trip, to upgrade the Debtor's diamond ring, and to pay off joint debts, this Court is satisfied that the Debtor significantly benefitted from the understatement of tax and therefore it would not be inequitable to make the Debtor liable for the taxes.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim of the Debtor is overruled, and the claim of the United States is allowed in full.

DONE AND ORDERED.