In re Gloria MICHAUD, Debtor.

Gloria MICHAUD, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 94–10783–MWV.
Adv. No. 95–1070–MWV.

United States Bankruptcy Court,
D. New Hampshire.

April 26, 1996.

Stephen C. Chute, Ian M. Bennie, Chute & Associates, Portland, ME, for Plaintiff.

Scott H. Harris, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, David L. Broderick, U.S. Attorney's Office, Concord, NH, for Defendant.

Gerri Karonis, Manchester, NH, for United States Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of Gloria Michaud ("Plaintiff") against the United States of America Internal Revenue Service ("IRS" or "government") seeking the determination of the Plaintiff's tax liability for the tax years 1980 and 1981. The IRS has filed a proof of claim in the amount of $491,383.17. The Plaintiff alleges that she is entitled to the protection of the "innocent spouse" provision of the Internal Revenue Code, 26 U.S.C. § 6013(e), and thus her liability for the above referenced years is zero.

The IRS on the other hand denies that the Plaintiff is an "innocent spouse" and consequently asserts that she is liable for the tax.

The matter was tried before the Court on November 29, 1995. The Plaintiff and her daughter, Darlene Tripp, testified for the Plaintiff. The sole witness for the IRS was Jamie Schiffer, a special agent for the IRS. Post-trial memorandum were filed by both parties in early February of 1996. For the reasons set out below, the Court finds that the Plaintiff is an innocent spouse pursuant to section 6013(e) of the Internal Revenue Code and the Plaintiff's tax liability for the years 1980 and 1981 is zero.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## INTRODUCTION

Gloria Michaud ("Plaintiff") filed a Chapter 11 bankruptcy petition on April 5, 1994. She filed the above-captioned adversary proceeding on April 24, 1995, after the United States' Internal Revenue Service ("IRS" or "government") filed a proof of claim in the amount of $491,383.17. (Claim No. 1.) The IRS claim consists of a secured claim in the amount of $226,034.14 for tax year 1980, which includes $56,114.00 for taxes, $17,583.23 for penalties, and $152,336.91 for interest, a secured claim in the amount of $264,949.03 for tax year 1981, which includes $47,809.50 for taxes, $9,775.42 for penalties, and $207,364.11 for interest, and an unsecured priority claim in the amount of $400.00, which is the estimated liability of the Debtor for tax year 1993.

## FACTS

The Plaintiff married Hubert Michaud on December 30, 1969. (Transcript at 21.) In 1982 and 1983, income tax returns were filed for the years 1980 and 1981, respectively. (Ex. 103 and 104.) The returns for 1980 and 1981 contain what purport to be the signa-

tures of Hubert and Gloria Michaud. The Plaintiff testified at trial that she did not sign either return. (Transcript at 42–43, 80.)

In 1980, the Michauds reported adjusted gross income of $172,605, which included wages, salaries and tips of $306,080, interest income of $1,208, a business loss of $127,456, a capital loss of $3,000, and a partnership loss of $4,227. (Ex. 103.) The Michauds' 1980 return contained deductions in the amount of $89,140, which included a deduction in the amount of $86,302 for a charitable contribution to the Life Science Church of real property described as the Five Seasons Campground, located in Mount Vernon, Maine. (Ex. 103.)

In 1981, the Michauds reported gross income of $212,454, which included wages, salaries and tips of $303,200, interest income of $1,772, a business loss of $96,074, a capital loss of $3,000, and rents of $6,556. (Ex. 104.) The rental income was attributable to rent received by the Plaintiff from the lease of a small house purchased by the Plaintiff for use by her daughter and nephews. (Ex. 101 at 2; Transcript at 50–51, 83–84.) The Michauds' 1981 return contained deductions in the amount of $111,069, which included a deduction in the amount of $103,227 for a charitable contribution based on the purported donation of the campground to the Life Science Church.

After auditing the 1980 and 1981 tax returns, the IRS disallowed in full the Michauds' charitable deductions to the Life Science Church because the Life Science Church was not a charitable entity and because Mr. Michaud retained possession and control of the campground despite his "contribution" to the church. (United States' Post–Trial Brief at 4, citing *United States v. Michaud*, 860 F.2d 495 (1st Cir.1988).) The IRS "also determined that the Michauds had unreported income in 1980 and 1981 of $21,-454.00 and $10,056, respectively. The unreported income took the form of expenditures made for the benefit of the Michauds by a company owned by Mr. Michaud. For example, Mr. Michaud's corporation paid, *inter alia*, the Michauds' personal attorney fees, landscaping fees, and home construction expenses." (United States' Post–Trial Brief at

4.) According to the IRS, however, the basis for the additional tax asserted against the Plaintiff is "almost exclusively due to [the] assertion of improper deductions." (United States' Amended Answer at ¶ 8.)

During the trial Plaintiff testified that she did not graduate from high school. (Transcript at 22.) She dropped out in the eleventh grade and married Roy Tripp, her first husband, and started a family. (Transcript at 22.) She received her GED two and half years later. (Transcript at 22.) The Plaintiff admitted that she never prepared a tax return during the course of her marriage to Hubert Michaud. (Transcript at 39.) She stated that her husband "always had an accountant" who prepared income tax returns. (Transcript at 40.) She testified that she remembered being asked a few times to give them the interest figures on the house and charge cards and the expense figures for other minor things. (Transcript at 40, 88.) The Plaintiff stated that she signed tax returns when the accountant came to the house and asked her to sign. (Transcript at 40.) According to the Plaintiff, she did not discuss matters pertaining to tax returns with her husband. (Transcript 40–41.) She testified that her husband was controlling. (Transcript at 38). This testimony was supported by the testimony of the Plaintiff's daughter who testified that her stepfather was verbally abusive to her mother. (Transcript at 159.) The Plaintiff and Hubert Michaud divorced in 1991. (Transcript at 21.) The Plaintiff testified that during the couple's twenty-two year marriage Bert Michaud kept his business dealings completely separate from those of the household. (Transcript at 38.) The Plaintiff was given a moderate allowance from which she was to make all household purchases. (Transcript at 29–30.)

## DISCUSSION

The Plaintiff has objected to the claim of the IRS on the basis that she is entitled to innocent spouse relief. Under 26 U.S.C. § 6013(d)(3), a husband and wife who make a joint income tax return are jointly and severally liable for the full amount owed. Congress has created a limited exception to this

rule called the innocent spouse provision and it provides:

Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

26 U.S.C. § 6013(e)(1).

The Plaintiff has the burden of rebutting the IRS's *prima facie* evidence that it is owed the amount stated in its proof of claim, *see Burger v. Level End Dairy Investors (In re Burger)*, 125 B.R. 894, 902 (Bankr.D.Del. 1991); *In re Beverages Int'l Ltd.*, 50 B.R. 273, 280 (Bankr.D.Mass.1985), as well as the burden of proving that she is entitled to the innocent spouse relief provided by section 6013(e), *see Purificato v. Commissioner*, 9 F.3d 290, 293 (3d Cir.1993), *cert. denied*, ―― U.S. ――, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994) (citing *Stevens v. Commissioner*, 872 F.2d 1499, 1504 (11th Cir.1989); *Purcell v. Commissioner*, 826 F.2d 470, 473 (6th Cir. 1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988); *Ballard v. Commissioner*, 740 F.2d 659, 663 (8th Cir.1984)).

### *Joint Return Requirement—26 U.S.C. § 6013(e)(1)(A)*

The first element of the innocent spouse provision the Plaintiff must prove is that a joint return was filed for tax years 1980 and 1981. The Plaintiff testified at trial that she did not sign the 1980 and 1981 returns. (Transcript at 42–43, 80.) She also indicated that she did not have any specific recollection of having reviewed any tax returns for 1980 and 1981. (Transcript at 44.) The Plaintiff testified, "I was led to believe that I always signed them, so I don't know if I signed dummies or what. I just don't know." (Transcript at 44.) The Plaintiff also indicated that she never authorized anyone else to sign these returns. (Transcript at 116.)

The question of whether a return is a joint return is primarily one of intent, and the question of the spouses' intentions is one of fact. *See Sharwell v. Commissioner*, 419 F.2d 1057, 1059 (6th Cir.1969); *Heim v. Commissioner*, 251 F.2d 44, 46 (8th Cir.1958) (citations omitted); *Estate of Campbell v. Commissioner*, 56 T.C. 1, 13, 1971 WL 2558 (1971) (citations omitted); *Brown v. Commissioner*, 24 T.C. 256, 265 (1955). The signature of a spouse is only one factor in determining whether a return is joint. *Sharwell*, 419 F.2d at 1059 (citation omitted). Many courts have held that there can be a binding joint return even though one of the spouses failed to sign it, provided it was intended to be a joint return. *Federbush v. Commissioner*, 34 T.C. 740, 757, 1960 WL 1373 (1960) (citations omitted), *aff'd, Federbush v. Commissioner*, 325 F.2d 1 (2d Cir.1963); *Heim*, 251 F.2d at 45 (citations omitted); *Estate of Upshaw v. Commissioner*, 416 F.2d 737, 742–43 (7th Cir.1969), *cert. denied*, 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970); *Campbell*, 56 T.C. at 12; *but see Helfrich v. Commissioner*, 25 T.C. 404 (1955) and *Commissioner v. Burer*, 340 F.2d 112 (5th Cir.1965) (holding that where the signature on a return is not the spouse's, the spouse did not authorize any one else to sign it for her, the spouse did not know the return had been filed, and she did not participate in its preparation, the return is not a joint return and the spouse is not jointly and severally liable).

Other factors to be considered in determining whether a return is joint include whether the spouse had sufficient income to file a separate return and never did so, *Abrams v. Commissioner*, 53 T.C. 230, 234, 1969 WL 1572 (1969), whether the spouse was aware that the returns were being prepared and took an active role in their preparation in that she maintained records of her

income and deductions and turned them over to her husband or his accountant for the express purpose of the preparation of income tax returns which were to include the income and deductions of both the husband and wife, *Sharwell*, 419 F.2d at 1059; *Federbush*, 34 T.C. at 756 (citations omitted), and the lack of a reason for a refusal to file a joint return, *Heim*, 251 F.2d at 47.

█ In this case, the Plaintiff stated during trial that she was involved in this suit "[b]ecause I was the wife of Burt Michaud, and *joint tax returns* were filed for me all the time I was married to him." (Transcript at 21.) The Plaintiff indicated that she "probably" intended to file joint tax returns with her husband, (Transcript at 44), and that as far as she knew she always filed *joint returns* with her husband. (Transcript at 80–81). In addition, the Plaintiff also testified that she signed documents called extensions in order to get an extension of time to file a *joint return*. (Transcript at 82.) She also told the attorney she hired to represent her before the IRS that she had filed *joint returns* with her husband during her marriage. (Transcript at 96.)

From this testimony it is clear that the Plaintiff *intended* to file a *joint return* in 1980 and 1981. In addition, the evidence indicates that the Plaintiff did have rental income but did not file a separate return. She also provided limited records for the preparation of tax returns. Further support of the finding that the 1980 and 1981 returns were joint can be found in the case of *Estate of Campbell v. Commissioner*, 56 T.C. 1, 1971 WL 2558 (1971). In *Campbell* and in this case, the couple customarily filed a joint return, the wife did not examine such returns, and the wife simply accepted her husband's preparation of the returns and signed them. The court in *Campbell* found that, "in this context, the absence of [the wife's] signature is hardly of overriding importance. Her signature on prior and subsequent returns appears to have been little more than a formal ritual as far as she was concerned. She left the responsibility for preparation and filing of the returns to her husband. She intended the returns to be filed as he chose." *Id.* at 13. The court also noted that the wife did

not raise the objection with the examining agent during the audit of the return, a situation which also occurred in this case. (Transcript at 126–28, 130.) The court in *Campbell* found that the wife's subsequent attempt to discredit the return was "merely an afterthought." *Campbell*, 56 T.C. at 14.

Based on all of the above, it is clear that the Plaintiff intended to file a joint return for the tax years 1980 and 1981. The fact that the Plaintiff did not sign the 1980 and 1981 tax returns is not a bar to this finding given the circumstances surrounding the filing of the Michauds' tax returns which indicate that the Plaintiff and her husband intended to file joint returns.

### Substantial Understatement of Tax Requirement—26 U.S.C. § 6013(e)(1)(B)

To satisfy 26 U.S.C. § 6013(e)(1)(B), the Plaintiff must prove that the 1980 and 1981 returns contain a substantial understatement of tax attributable to grossly erroneous items of one spouse. The government has agreed that the Plaintiff has met her burden with respect to this section. In the government's view, the charitable deduction relating to the purported donation of the campground in Maine to the Life Science Church was a grossly erroneous item of Hubert Michaud as it was without basis in fact or law. (Transcript at 168–69.) Accordingly, the Plaintiff has met her burden with respect to proving this second element of innocent spouse relief.

### Knowledge of Understatement Requirement—26 U.S.C. § 6013(e)(1)(C)

The Plaintiff must next establish that "in signing the return ... she did not know, and had no reason to know, that there was such substantial understatement." 26 U.S.C. § 6013(e)(1)(C). The Plaintiff testified that she never signed the 1980 and 1981 returns. (Transcript at 42–43, 80.) At trial she indicated that she did not know who had signed her name to the returns. (Transcript at 80.) The parties did not address during the trial or in their post-trial briefs the issue of whether the innocent spouse provision is ap-

plicable in cases where a spouse has not signed a joint return.

In enacting the original innocent spouse provision in 1971, Congress sought to reduce the inequity of a system which held a spouse strictly liable for tax deficiencies that resulted from omissions of income attributable solely to the other spouse, even if the spouse knew nothing of the erroneous item. *Guth v. Commissioner,* 897 F.2d 441, 443 (9th Cir. 1990). Congress's goal was "to bring government tax collection practices into accord with basic principles of equity and fairness." *Id.* at 443 (citing S.Rep. No. 1537, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 6089, 6091). In 1984, Congress amended the innocent spouse provision and extended protection to cases where deficiencies arise from deductions for which there is no basis in fact or law. Tax Reform Act of 1984, Pub.L. No. 98–369, § 424(a), 98 Stat. 494, 801–02 (1984). According to the legislative history, the committee believed that:

> the present law rules relieving innocent spouses from liability for tax on a joint return are not sufficiently broad to encompass many cases where the innocent spouse deserves relief. Relief may be desirable, for example, where one spouse claims phony business deductions in order to avoid paying tax and the other spouse has no reason to know that the deductions are phony and may be unaware that there are untaxed profits from the business which the other spouse has squandered.

H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1502 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1143.

■ The legislative history makes clear that Congress's purpose in enacting section 6013(e) and the amendment was to remedy injustice. *See also Price v. Commissioner,* 887 F.2d 959, 963 n. 9 (9th Cir.1989) (citing *Allen v. Commissioner,* 514 F.2d 908, 915 (5th Cir.1975) and *Estate of Killian,* 53 T.C.M. (CCH) 1438, 1441 (1987)); *Ballard v. Commissioner,* 740 F.2d 659, 664 (8th Cir. 1984) (quoting *Sanders v. United States,* 509 F.2d 162, 166–67 (5th Cir.1975) ("Congress intended the [innocent spouse] exception to remedy a perceived injustice, and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive reading.")). In light of Congress's articulated policy, it would be inequitable to deny the Plaintiff relief under the innocent spouse provision in this case *solely* because she did not sign the returns when she would clearly be entitled to relief if she had met the other requirements of section 6013(e)(1) *and* she had signed the returns. Therefore, even though the Plaintiff did not sign the 1980 and 1981 returns, she still may be entitled to innocent spouse relief if she can satisfy the other requirements of section 6013(e)(1).

■ In substance section 6013(e)(1)(C) requires in deduction cases, which this is, that the innocent spouse prove that she did not know or have reason to know that the deduction would give rise to a substantial understatement on the tax return. This element requires the Court to determine whether the spouse had actual or constructive knowledge of the substantial understatement at the time the return was filed. *See Erdahl v. Commissioner,* 930 F.2d 585, 590 (8th Cir.1991); *Stevens v. Commissioner,* 872 F.2d 1499, 1505 (11th Cir.1989).

In this case, the Plaintiff testified that she had no actual knowledge of her husband's fraudulent campground deduction at the time the tax returns were filed. (Transcript at 49–50, 115–16.) The issue then is whether the Plaintiff had constructive knowledge of the fraudulent deduction at the time the 1980 and 1981 tax returns were filed.

■ The courts have identified several factors as relevant in determining whether a spouse had reason to know of the understatement. They include: (1) the alleged innocent spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of income, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. *Kistner v. Commissioner,* 18 F.3d 1521, 1525 (11th Cir.1994) (citations omitted); *Pietromonaco v. Commissioner,* 3 F.3d 1342, 1345 (9th Cir.1993) (citations omitted); *Erdahl,* 930 F.2d at 590–91 (citations omitted);

*Price,* 887 F.2d at 965 (citations omitted); *Stevens,* 872 F.2d at 1505 (citations omitted); *In re Blanco,* 166 B.R. 759, 763 (Bankr. M.D.Fla.1994) (citations omitted). Some courts have described the test as whether a reasonable prudent taxpayer in the spouse's position would be led to question the legitimacy of the deduction. *See, e.g., Guth,* 897 F.2d at 445. A duty of inquiry arises if the spouse is aware of sufficient facts to put her on notice of an understatement. *Id.*

■ This case is different from the typical case because the Plaintiff was not given an opportunity to examine the returns and review the erroneous deductions. Because the Plaintiff did not examine the returns, the returns could not have put the Plaintiff on notice that the deductions had been taken. Therefore, the Plaintiff had no reason to make an inquiry into the validity of the deduction based on the 1980 and 1981 returns. Thus, this is not a case where the Plaintiff signed the return and chose to remain ignorant. *See Price,* 887 F.2d at 965 (citing *Levin v. Commissioner,* 53 T.C.M. (CCH) 6, 8–9 (1987) (spouse cannot obtain benefits of innocent spouse protection by simply turning a blind eye to facts fully disclosed on a return)); *In re Blanco,* 166 B.R. at 763 (citing *Erdahl v. Commissioner,* 930 F.2d 585 (8th Cir.1991)) ("[a] taxpayer cannot avoid joint and several liability, however, because he fails to review his income tax return before signing it because the provision protects the innocent not the ignorant.").

The Plaintiff must show, however, that there were no other facts and circumstances to alert her that the erroneous deductions were included on the 1980 and 1981 returns. The Plaintiff testified that she attended meetings of the Life Science Church in Worcester, Massachusetts, on two occasions in the late 1970s. (Transcript at 47–48, 68–70.) At those meetings the speakers discussed ways in which people could reduce their taxes. (Transcript at 48, 69–71.) The Plaintiff testified that she accompanied her husband to Maine in the late 1970s where he purchased the Five Seasons Campground. (Transcript at 46–47, 71.) The Plaintiff indicated at trial that the campground consisted of seventy-two acres and had a lodge and campsites. (Transcript at 72.) The Plaintiff and her family would occasionally visit the campground on weekends. (Transcript at 46.) According to the Plaintiff, her husband had a sales force and was trying to sell individual campground lots. (Transcript at 46.) The Plaintiff was unaware of any church buildings or church services being conducted on the property. (Transcript 72–73.)

Nothing surrounding these facts and circumstances would have alerted the Plaintiff at the time the tax returns were filed that her husband had purportedly donated the campground to the Life Science Church and claimed charitable deductions for such a donation, especially given the Plaintiff's high school education, her limited involvement and her husband's general evasiveness regarding his business dealings, and the lack of lavish or unusual expenditures by either the Plaintiff or her husband. The evidence before the Court supports a finding that the Plaintiff knew that her husband owned the campground, that she attended a couple of meetings of the Life Science Church, and that her husband had some relationship to the Life Science Church. However, there is no evidence that she knew, or had reason to know, of the underlying transaction giving rise to the disallowed deductions, i.e., the donation of the campground to the Life Science Church. Without knowing of the donation, her knowledge of or duty to inquire about the charitable status of the church is irrelevant.

In addition, the Plaintiff testified that the tax returns were never filed timely and that her husband always received an extension to file. (Transcript at 40–41.) The 1980 and 1981 tax returns, which are at issue in this case, were signed on July 14, 1982, and on October 6, 1982, respectively, and were filed with the IRS on September 13, 1982, and on September 19, 1983, respectively. (Ex. 103 and 104.) Therefore, this is not a situation where the couple always filed in April in the regular course in which case a spouse would be aware of her failure to sign a particular year's tax return.

Accordingly, the Plaintiff has satisfied her burden with respect to proving that she did

not have actual or constructive knowledge of the erroneous charitable deduction which appeared on the 1980 and 1981 tax returns.

### *Inequitable Requirement—26 U.S.C. § 6013(e)(1)(D)*

■ The last element that the Plaintiff must show is that it would be inequitable to hold her liable for tax deficiencies attributable to the substantial understatements which appeared on the 1980 and 1981 tax returns, taking into account all the facts and circumstances. 26 U.S.C. § 6013(e)(1)(D). "The 'facts and circumstances' that must be considered are those having a rational bearing on whether a putatively 'innocent spouse' should be held liable for taxes and additions due." *Purificato v. Commissioner,* 9 F.3d 290, 296 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994). While this section does not expressly mention whether the spouse must have significantly benefitted from the understatement, the history of the provision supports the conclusion that this question should be considered in determining whether joint and several liability would be inequitable. *Id.* at 293; H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1502 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1143–44. A spouses's benefit or lack of benefit, however, is not necessarily determinative of the issue. *Purificato,* 9 F.3d at 293–94. Other factors which can be taken into account are whether the spouse in question is deserted, divorced, or separated, *id.* at 293 (citing S.Rep. No. 1537, 91st Cong., 2d Sess. 3 (1970), *reprinted in* 1970 U.S.C.C.A.N. 6089, 6092), and the spouse's lifestyle, *id.* at 296. However, personal tragedies such as criminal and drug-using children, seriously ill parents, and alcoholic, gambling, and physically abusive husbands have no rational bearing on whether it would be equitable to hold a spouse liable for taxes and additions due on joint returns. *Id.* at 297.

The courts which have applied section 6013(e)(1)(D), or its pre-amendment predecessor, have looked to various facts in making their decisions. *See, e.g., In re Blanco,* 166 B.R. 759, 764 (Bankr.M.D.Fla.1994) (holding that a $2,000 trip, an upgrade of the debtor's diamond ring, and the payment of joint debts constituted enough of a benefit so that it would not be inequitable under section 6013(e)(1)(D) to hold the spouse liable for the tax); *Pietromonaco v. Commissioner,* 3 F.3d 1342, 1347–48 (9th Cir.1993) (finding that periodic trips to the hairdresser, bowling and eating out at cafeteria type restaurants twice a week, hiring a gardener, and two day trips to Las Vegas where the couple would also visit the husband's sickly brother were not significant benefits which would preclude innocent spouse relief); *Ballard v. Commissioner,* 740 F.2d 659, 665 (8th Cir.1984) (finding that there was not a significant benefit as the spouse never received over $100 in cash or property as a transfer or gift from her husband during the tax years in question and did not live extravagantly); *In re Conti,* 42 B.R. 122, 126–27 (Bankr.E.D.Va.1984) (holding that the use of luxurious automobiles that may have been financed, in part, by the omitted income was not a significant benefit which precluded relief); *Terzian v. Commissioner,* 72 T.C. 1164, 1173, 1979 WL 3839 (1979) (receiving a lump sum payment of $155,000 from her spouse which was in the nature of alimony or support did not preclude innocent spouse relief); *Mysse v. Commissioner,* 57 T.C. 680, 699, 1972 WL 2536 (1972) (holding that ordinary support by husband was not sufficient to deny the exception).

In this case, the Plaintiff testified that she received a weekly allowance to pay household expenses both before and after the filing of the 1980 and 1981 tax returns. (Transcript at 30.) Early in the marriage the amount was $250 per week, it increased to $300 per week in the late 1970s and eventually increased to $350 per week. (Transcript at 31, 33–34.) The Plaintiff also testified that she had no joint accounts with her husband and accumulated little savings during the marriage. (Transcript at 30, 59.) Her travel consisted of some cruises and trips to the Mediterranean, Bermuda, and Majorca. Upon her divorce from her husband in 1991, she received title to the family home in Dover, New Hampshire, which had been held solely in his name; today it is the Plaintiff's only asset. (Transcript at 54, 67.) The IRS has taken the Plaintiff's IRA, her checking

account, and the proceeds from a small house which was in her name. (Transcript at 51, 64, 112). She does not own an automobile. (Transcript at 67.)

These facts and circumstances show that it would be inequitable to hold the Plaintiff liable for the tax deficiencies attributable to the substantial understatements which appeared on the 1980 and 1981 tax returns. The only benefit which the Plaintiff may have received from the inclusion of the erroneous deductions were ordinary support, a few trips and the family home. There is no evidence in the record, however, which would indicate when the Plaintiff took these trips or that they were attributable to the deductions. In addition, the Plaintiff testified that the home she was awarded in her divorce was purchased by the Plaintiff's husband before the couple married in 1969.

The government made much of the fact that the Plaintiff ran a restaurant in Dover, New Hampshire beginning in 1986. (Transcript at 90–94.) According to the government the Plaintiff was not an innocent spouse because she had sufficient business acumen to manage a one hundred and fifty to two hundred seat restaurant. The Court finds that this activity occurred years after the improper deductions were taken on the 1980 and 1981 tax returns. To the extent that the government argued that the Plaintiff's restaurant was the fruit of the improper deductions, the Court finds that there is insufficient evidence in the record to support such a finding.

### CONCLUSION

The Plaintiff has proven the elements of section 6013(e)(1). She is an innocent spouse and should not be held liable for the taxes and additions to tax attributable to the erroneous charitable deductions included in the Michauds' 1980 and 1981 tax returns. The Plaintiff has rebutted the IRS's *prima facie* case and her objection to its claim should be granted.

The Court notes that in Count II of the Plaintiff's complaint the Plaintiff asked this Court to address the issue of certain payments made to the IRS by the Plaintiff on account of the 1980 and 1981 tax returns.

The only issue addressed by the parties during the trial was the innocent spouse issue. Therefore, if the parties are unable to agree as to the treatment of the payments made by the Plaintiff, the Court will entertain a motion to decide how the payments should be treated.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order with this opinion.